**Reversed and Remanded and Opinion filed October 17, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00038-CV

### BEATRICE ZARATE, Appellant

### V.

### ARIC RODRIGUEZ DBA MID-TOWN REALTY, Appellee

**On Appeal from the County Civil Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 974424-101**

## O P I N I O N

Appellee Aric Rodriguez d/b/a Mid-Town Realty sued appellant Beatrice Zarate to collect the unpaid portion of the commission he earned for brokering a real estate transaction for Zarate. The jury found in favor of Rodriguez, and the trial court signed a judgment awarding Rodriguez $23,375.00 in damages based on the jury's findings. The judgment also awards Rodriguez his attorneys' fees. Zarate appeals in five issues.

Zarate argues in her first issue that the trial court abused its discretion when it denied her motion for directed verdict and then her motion for judgment notwithstanding the verdict (JNOV) based on her contention that Rodriguez did not allege and prove he was a license holder as required by the Texas Real Estate License Act. *See* Tex. Occ. Code Ann. § 1101.806(b) (West Supp. 2016). We overrule this issue because Rodriguez adequately alleged and subsequently proved that he was a license holder at all relevant times.

In her second issue, Zarate contends the trial court abused its discretion when it denied her request for a trial amendment to add a claim against Rodriguez. In her third issue, Zarate complains that the trial court abused its discretion when it allowed Rodriguez a trial amendment to add additional details to his allegation that he was a license holder at all times relevant to his claim against Zarate. We overrule Zarate's second issue because Rodriguez demonstrated that Zarate's request to add a new cause of action after he had rested his case (1) added a new substantive matter that reshaped the nature of the trial, (2) was such that he could not have anticipated it in light of the development of the case up to that point in time, and (3) would have detrimentally affected the presentation of his case. We overrule Zarate's third issue because Rodriguez's requested trial amendment was a procedural amendment to conform his pleadings to the evidence.

In her fourth issue, Zarate contends the trial court erred when it granted Rodriguez's no-evidence motion for summary judgment on her affirmative defenses to Rodriguez's claim for breach of contract. We overrule this issue in part because (1) the trial court denied the motion on many of the defenses; and (2) for all defenses on which the trial court granted summary judgment except waiver, subsequent events in the trial court rendered any error harmless. We sustain Zarate's fourth issue in part because the trial court's summary judgment on Zarate's waiver defense

2

was not rendered harmless by subsequent events in the trial court.

Zarate asserts in her fifth issue that the trial court erred when it granted Rodriguez's no-evidence motion for summary judgment on some of her counterclaims. We overrule this issue because Zarate did not file a response to Rodriguez's motion. We therefore reverse the trial court's judgment and remand the case for a new trial on the issues of Zarate's affirmative defense of waiver and Rodriguez's request for attorney's fees.

## BACKGROUND

### A.  Zarate wants to sell her nightclub and retire.

For many years, Zarate owned and operated nightclubs, including the nightclub at issue in this appeal. In early 2009, Zarate began considering retirement. Zarate told a friend and business associate of her desire to sell the nightclub and retire. The friend suggested that Zarate should give appellee Aric Rodriguez, the son of a mutual friend, the opportunity to sell her nightclub. Zarate told the friend that she would talk to Rodriguez.

### B.  Zarate hires Rodriguez as her real estate broker.

Zarate testified that her initial contact with Rodriguez occurred in early April 2009. On the other hand, Rodriguez testified that he believed the call occurred on April 22, 2009. Zarate told Rodriguez during this initial conversation that she was interested in selling or leasing her nightclub. Rodriguez told Zarate that he worked in real estate and that he could help her sell the nightclub. Zarate cut the telephone call short because she needed to get her nightclub ready to open. Zarate asked Rodriguez to call her back the next week. When Rodriguez called Zarate back, she told him that she was going to hire him as her broker. During this conversation, Zarate and Rodriguez did not discuss terms such as the amount of the commission.

3

At the time of his initial telephone call with Zarate, Rodriguez was a licensed real estate sales agent working under a sponsoring broker. Rodriguez obtained his own Texas real estate broker's license on April 29 or 30, 2009. Rodriguez called Zarate on May 1 to inform her that he had a listing agreement for her to sign. Rodriguez met with Zarate on May 5. They discussed the marketing of the nightclub during this meeting. Rodriguez also presented a proposed listing agreement to Zarate during the meeting. They discussed the terms and signed the Listing Agreement during that meeting.

In the Listing Agreement, Zarate designated Rodriguez as her agent and granted him the exclusive right to sell her nightclub. The Listing Agreement also authorized Rodriguez to lease the nightclub. If Rodriguez procured a tenant, and if Zarate agreed to lease the nightclub to that prospective tenant, the Listing Agreement specified that Rodriguez would be entitled to a commission of "[o]ne months [sic] rent per annum specified in Paragraph 4A of Commercial Lease Contract," payable "at the time the lease is executed."

### C. Rodriguez obtains a tenant for the nightclub and he defaults on the lease.

Rodriguez began marketing the nightclub after Zarate signed the Listing Agreement. Rodriguez listed the nightclub on "commercial MLS databases" and made numerous telephone calls informing contacts of the new listing. Steve Ponce contacted Rodriguez about the nightclub within a few days of the initial listing. Ponce was interested in leasing the nightclub because he did not have the money at the time to buy it outright.

Rodriguez arranged for Ponce to see the nightclub. After the showing, Zarate and Ponce wanted to move forward with an agreement. The parties eventually agreed on a 42-month lease. Zarate signed the lease on June 2, 2009 and Ponce

4

signed the next day. The monthly rent was $6,750 for the first six months, increased to $8,250 for the next twelve months, and increased again to $9,250 for the final 24 months. According to Rodriguez, Zarate owed him a commission totaling $30,125.

Rodriguez scheduled a meeting, which he called a closing, about a week after the parties had signed the lease. According to Rodriguez, the purpose of the meeting was for Ponce to pay the initial funds required by the lease. Before the closing, Rodriguez called Zarate to remind her to "bring her checkbook" so that she could pay his commission. Zarate responded that she did not have any money and she could not pay the commission. Zarate offered Rodriguez $300.

Zarate's version of events differed from Rodriguez's. Zarate testified Rodriguez did not call her the day before the meeting with Ponce was to occur, but met personally with her instead. According to Zarate, Rodriguez presented her with a document, which she called an amendment, regarding payment of his commission. Zarate testified that the amendment called for Zarate to pay $10,000 of Rodriguez's commission the next day, $10,000 three months later, and the final $3,125 three months after that.[1] Zarate further testified that she got very upset, refused to sign the amendment, and told Rodriguez to void the lease with Ponce; she then left. Zarate claims Rodriguez called her later that same day to tell her that she had to sign the amendment because she had already signed the lease with Ponce. Zarate also testified Rodriguez told her that if she showed up at the meeting the next day, they would renegotiate the commission.

Both Zarate and Ponce attended the meeting the next day. Ponce paid Zarate $6,750. The evidence was disputed whether this was intended to be a security deposit or the first month's rent. Rodriguez also discussed his commission with

---

[1] Zarate offered no explanation for the difference in the total amount offered by Rodriguez in this payment plan.

5

Zarate. Zarate once again told Rodriguez that she could not pay the commission. Despite her refusal to pay at the meeting, Zarate admitted at trial that the Listing Agreement called for her to pay Rodriguez his commission "at the time the lease is executed."

Rodriguez presented Zarate with several possible amendments to the Listing Agreement that gave her different options for paying his commission. According to Rodriguez, Zarate disliked all options he offered to her. Zarate eventually signed a hand-written Amended Listing Agreement providing for a $6,750 commission payment on June 12, 2009 (the date of the meeting), a $10,000 payment on February 15, 2010, and a final payment of $13,375 by November 15, 2010. Zarate paid Rodriguez the $6,750 she received from Ponce. It is undisputed this is the only money Zarate paid Rodriguez.

Ponce did not complete the full term of the nightclub lease. Ponce abandoned the nightclub sometime during November 2009. Zarate testified that Ponce's default on the lease forced her to come out of retirement to run the nightclub for another year. Zarate eventually found a buyer for the nightclub.

### D. Zarate refuses to pay Rodriguez the second commission payment and litigation ensues.

Under the Amended Listing Agreement, Zarate's second commission payment to Rodriguez was due in February 2010. Rodriguez called Zarate in February to ask for the second payment. Zarate refused to pay and told him that she was never going to pay the remainder of the commission. At trial, Zarate offered various reasons for not paying Rodriguez, including Rodriguez's alleged failure to qualify Ponce as a tenant and her belief that the commission was payable annually, one month's rent during each year of the lease. Zarate testified that she "did not have a problem paying [Rodriguez] the one month's rent per year."

6

Rodriguez sued Zarate for her failure to pay the full commission amount. Rodriguez alleged claims for breach of contract and quantum meruit. Zarate filed an answer asserting numerous affirmative defenses and counterclaims, including breach of contract, common-law and statutory fraud, negligent misrepresentation, breach of fiduciary duty, and violation of the Deceptive Trade Practices Act (DTPA).[2]

## E. Rodriguez files no–evidence motions for summary judgment on Zarate's affirmative defenses and on her counterclaims.

Rodriguez filed a no-evidence motion for summary judgment challenging Zarate's affirmative defenses to his claim for breach of contract. Rodriguez asserted that Zarate "cannot provide competent admissible summary judgment evidence as to one or more element[s] of such defense." Zarate argued in her response that Rodriguez's no–evidence motion was conclusory because it did not challenge specific elements of her affirmative defenses. Zarate substantively responded to the motion and submitted summary judgment evidence. The trial court denied Rodriguez's motion as to Zarate's affirmative defenses of estoppel, justification, and prior material breach. The trial court granted the motion on the remainder of Zarate's affirmative defenses: fraud, unconscionability, duress, waiver, that Rodriguez's own acts and omissions caused his damages, and that Rodriguez's conduct excused Zarate's performance.

Rodriguez also filed a no-evidence motion for summary judgment challenging Zarate's counterclaims in March 2014. The trial court partially granted Rodriguez's 2014 no-evidence motion. Specifically, the trial court granted summary judgment

---

[2] Zarate also sued Ponce as a third–party defendant for breach of the lease agreement. Ponce, in turn, filed counterclaims against Zarate. The trial court eventually severed the claims between Zarate and Ponce, which are not relevant to this appeal.

on Zarate's counterclaims for violations of the DTPA, common-law fraud, breach of fiduciary duty, defamation, conspiracy, and assisting and encouraging.

### F.    The case is tried and the jury finds in favor of Rodriguez.

After a first attempt to try the case ended in a mistrial, the parties went to trial again in August 2015. When Rodriguez rested his case, Zarate moved for a directed verdict on Rodriguez's claims, contending that he failed to plead and prove that he was a license holder when he first contacted her. Zarate claimed she was entitled to a directed verdict because Rodriguez "offered" his brokerage services to Zarate on April 22, 2009, which was before he had obtained his broker's license. Zarate directed the trial court to Rodriguez's First Amended Petition, in which he used the present tense to describe his broker status: "Rodriguez is a licensed real estate broker . . . ."

Rodriguez opposed the motion by: (1) pointing out that the evidence was undisputed that he was a license holder at all relevant times; (2) arguing that the Listing Agreement was not signed until May 5, 2009, which was after he became a licensed real estate broker and was the date he started marketing the nightclub; and (3) moving for leave to file a trial amendment to conform his pleadings to the evidence. Zarate objected to Rodriguez's request to file a trial amendment. The trial court allowed Rodriguez to file a trial amendment, which he did the next day. Rodriguez alleged in the trial amendment that, "[a]t all times relevant to the claims asserted against [Zarate] and the facts related thereto, [he] was a 'license holder' as that term is defined in [the Real Estate License Act]." The trial court denied Zarate's motion for a directed verdict.

The next morning, Zarate requested a trial amendment of her own. Zarate sought permission to assert a claim against Rodriguez for the statutory penalties set forth in section 1101.754 of the Texas Real Estate License Act. *See* Tex. Occ. Code

Ann. § 1101.754 (establishing private cause of action to seek penalty from person who received real estate commission as result of acting as broker or sales agent without license). Zarate made her request after Rodriguez had rested his case. Rodriguez opposed Zarate's request, and the trial court denied Zarate permission to file the trial amendment.

After the close of the evidence, the jury found that (1) Zarate failed to comply with the Listing Agreement or Amendment to the Listing Agreement; (2) her failure to comply was not excused; (3) Rodriguez's damages were $23,375; (4) Rodriguez did not commit statutory or common-law fraud against Zarate; and (5) Rodriguez did not make a negligent misrepresentation on which Zarate justifiably relied. The trial court signed a judgment awarding Rodriguez $23,375 in actual damages as well as $92,188.39 in attorney's fees—an issue the parties had agreed to submit to the court. Zarate later filed a motion for JNOV and a motion for new trial, in which she reasserted her claim that Rodriguez could not recover a real estate commission because he did not plead and prove that he was a license holder when he performed services for Zarate. The trial court denied Zarate's post-trial motions. This appeal followed.

## ANALYSIS

### I. The trial court did not err by denying Zarate's motion for directed verdict and motion for judgment notwithstanding the verdict.

Zarate argues in her first issue that the trial court "abused its discretion" when it denied her motion for directed verdict and then her motion for JNOV. Both motions made the same argument: "Rodriguez failed to plead and prove that he was an authorized salesperson when he offered his broker services to Zarate as required by the Texas Real Estate License Act." Under that act, "[a] person may not maintain an action to collect compensation for an act as a broker or sales agent . . . unless the

9

person alleges and proves that the person was . . . a license holder at the time the act was commenced . . . ." Tex. Occ. Code Ann. § 1101.806(b)(1); *see also* § 1101.351(b) ("An applicant for a broker or sales agent license may not act as a broker or sales agent until the person receives the license evidencing that authority.").

## A.  Standard of review

A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment. *Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 66 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).  A JNOV is proper when the evidence is conclusive and one party is entitled to prevail as a matter of law, or when a legal principle precludes recovery.  *Houston Med. Testing Serv., Inc. v. Mintzer*, 417 S.W.3d 691, 695 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  The latter circumstance can occur when the record establishes that a theory of liability found by the jury is barred as a matter of law.  *Id.*  Zarate's first issue also presents a question of statutory construction.  We construe statutory provisions to ascertain and effectuate legislative intent, and we ascertain that intent by first looking to the plain and common meaning of the statute's words.  *Tanglewood Homes Ass'n*, 436 S.W.3d at 72.  We must also view a statute's terms in context and give them full effect.  *Id.*  Zarate's motions present questions of law, which we review de novo.  *See id.*; *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 109 (Tex. App.—El Paso 1997, pet. denied).

## B.  Rodriguez adequately pled and subsequently proved that he met all statutory requirements to recover a real estate commission.

The facts relevant to Zarate's first issue are undisputed.[3]  Rodriguez became

---

[3] Within her first issue, Zarate classifies most of these undisputed facts as judicial admissions made by Rodriguez during his trial testimony.  She goes on to assert that these judicial admissions establish Rodriguez violated the statutory requirement that he allege and prove he was a license holder at the time the act was commenced.  Rodriguez's trial testimony cited by Zarate

a broker on April 29 or 30, 2009. *See* Tex. Occ. Code Ann. § 1101.002(1) (defining "Broker"). Rodriguez initially spoke with Zarate, via telephone, regarding the sale or leasing of her nightclub prior to that date. Rodriguez held a license as a sales agent at the time of his initial telephone call with Zarate, and the evidence established that he had a sponsoring broker at that time. *See id.* § 1101.002(7) (defining "Sales agent"). Zarate signed the Listing Agreement designating Rodriguez as the listing broker on May 5, 2009, and Rodriguez started marketing the property that day. In his First Amended Petition (his live pleading at the beginning of trial), Rodriguez alleged that he "is a licensed real estate broker that assists owners of real estate to sell and lease properties in exchange for a fee being paid in the form of a commission, or commissions." Rodriguez requested, and received, permission to file a trial amendment alleging that, "[a]t all times relevant to the claims asserted against [Zarate] and the facts related thereto, [he] was a 'license holder' as that term is defined in [the Real Estate License Act]."

Zarate argues that the resolution of her first issue turns on the meaning of the statutory requirement that the person seeking compensation plead and prove that he was a license holder "at the time the act was commenced." *See* Tex. Occ. Code Ann. § 1101.806(b)(1). Zarate contends Rodriguez commenced the act of performing

---

qualifies, at most, as quasi-admissions. *See Hennigan v. I. P. Petroleum Co., Inc.*, 858 S.W.2d 371, 372 (Tex. 1993) (explaining difference between judicial admissions and quasi-admissions, which are a party's testimonial declarations contrary to that party's prior position, and requirements for quasi-admissions to be treated as judicial admissions). Regardless of the label applied to this evidence, however, Zarate misstates one crucial fact. Without citing to the reporter's record, Zarate asserts Rodriguez admitted he was not working under or for a sponsoring broker at the time he initially contacted Zarate. Rodriguez's uncontradicted testimony demonstrates otherwise. Rodriguez testified to the timeline of his employment working in real estate: (1) he received his license as a sales agent in 2006 and went to work for Keller Williams; (2) he left Keller Williams in October 2008; (3) he then worked as a sales agent with a sponsoring broker for about six months, which included April 2009; and (4) he obtained his broker's license on April 29 or 30, 2009.

11

broker services for her when he initially spoke with her regarding the sale or lease of her nightclub—a date before he obtained his broker license and (in her view) during a period when he did not have a sponsoring broker. In support of her position, Zarate cites the Real Estate License Act, which defines "Broker" to include a person performing the act of negotiating or attempting "to negotiate the listing . . . of real estate." *Id.* § 1101.002(1)(A)(iii). Zarate asserts that the allegations in Rodriguez's First Amended Petition are insufficient to meet the statutory pleading requirements because he used the present tense to describe his current status as a broker, rather than alleging that "he was a salesperson at the time he offered his services."

Assuming without deciding that Zarate is correct in her assertion that Rodriguez commenced performing services on the day he initially spoke with her, applying the fair-notice pleading standard,[4] we conclude Rodriguez's First Amended Petition complied with the statute because it gave Zarate notice of Rodriguez's claims for compensation as a license holder and enabled her to prepare her defense. *See* Tex. R. Civ. P. 47 (providing petition shall contain "a short statement of the cause of action sufficient to give fair notice of the claim involved"); *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982). Additionally, any perceived deficiency in Rodriguez's First Amended Petition was corrected when the trial court granted him leave to file a trial amendment.[5] *See* Tex. R. Civ. P. 66 (providing trial amendment may be granted to correct defect, fault, or omission in a pleading called to trial

---

[4] Zarate did not file special exceptions to Rodriguez's First Amended Petition. We therefore liberally construe Rodriguez's petition to determine whether he adequately pleaded his causes of action. *Port of Houston Auth. of Harris Cty. v. Zachry Constr. Corp.*, 513 S.W.3d 543, 571 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

[5] In Part II below, we address the propriety of the trial court granting Rodriguez leave to amend.

court's attention during trial). As quoted above, the trial amendment tracked the statutory language.

We also reject Zarate's contention that the trial court erred when it denied her motions for directed verdict and JNOV because Rodriguez failed to prove that he was "a license holder at the time the act was commenced." Tex. Occ. Code Ann. § 1101.806(b)(1). The undisputed evidence, summarized above, establishes that Rodriguez held a real estate license—either as a sponsored sales agent or a broker— at all times relevant to his breach of contract claim. *See id.* § 1101.002(7) (defining sales agent as "a person who is sponsored by a licensed broker for the purpose of performing an act described in [the statutory definition of broker]"). As a sponsored sales agent, Rodriguez was authorized to perform any act that a licensed broker could perform. *Id.* Further, Zarate does not dispute that Rodriguez held a broker's license on the day that she signed the Listing Agreement and the Amended Listing Agreement, as well as on the day that the lease agreement was signed—which was the date Rodriguez actually earned his commission. *See Dean A. Smith Sales, Inc. v. Metal Sys., Inc.*, 397 S.W.3d 305, 307 (Tex. App.—Dallas 2013, pet. denied) (affirming summary judgment against broker on broker's action for breach of contract seeking commission because broker failed to produce evidence establishing fact issue that it possessed required real estate license on date parties signed listing agreement); *Justice v. Willard*, 538 S.W.2d 651, 656 (Tex. App.—Amarillo 1976, no writ) (holding broker seeking to collect real estate commission "must have had the license at the time the cause of action arose, i.e., when the commission was earned").

Because Rodriguez adequately pled, and subsequently proved, that he was a "license holder at the time the act was commenced," we overrule Zarate's first issue.

13

**II.** **The trial court did not abuse its discretion when it allowed Rodriguez to file a trial amendment and subsequently refused Zarate permission to do so.**

Zarate argues in her second issue that the trial court abused its discretion when it denied her request to file a trial amendment adding a new cause of action to the litigation. In her third issue, Zarate asserts that the trial court also abused its discretion when it granted Rodriguez permission to file a trial amendment to conform his pleadings to the evidence.

**A.** **Standard of review and applicable law**

Trial amendments are governed by Rule 66 of the Texas Rules of Civil Procedure, which provides that the court may allow amendments to a pleading and shall do so when the amendment would serve the presentation of the merits without prejudicing the opposing party's action or defense on the merits. Under the rule, a trial court has no discretion to refuse a trial amendment unless: (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment is prejudicial on its face because it asserts a new cause of action or defense, and the opposing party objects to the amendment. *Tanglewood Homes Ass'n,* 436 S.W.3d at 64. Trial amendments that are procedural in nature, such as conforming the pleadings to the evidence introduced during trial, must be allowed. *Id.* Substantive amendments or those that change the nature of the trial are discretionary, and the court's decision to allow or deny them may be reversed only if the court clearly abused its discretion. *Id.*

A proposed trial amendment asserting a new cause of action may be prejudicial on its face. *Id.* We evaluate the amendment in the context of the entire case to determine prejudice. *Id.* A trial amendment is prejudicial on its face if (1) the amendment asserts a new substantive matter that reshapes the nature of the trial

14

itself; (2) the new matter is of such a nature that the opposing party could not have anticipated it in light of the development of the case up to the time the amendment was requested; and (3) the opposing party's presentation of its case would be detrimentally affected by the amendment. *Id.*

A trial court also has discretion to deny a trial amendment adding a new cause of action if the opposing party objects and "it appears that the new matter was known to the party seeking to file the amendment, or by reasonable diligence it could have been known by the party." *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 116 (Tex. App.—San Antonio 2011, pet. denied). Under this test, a discretionary trial amendment should not be rejected simply because it alleges a new cause of action. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994). Instead, to determine whether the trial court clearly abused its discretion in allowing a trial amendment adding a new cause of action, we must examine the three factors listed above in the context of the entire case. *See Tanglewood Homes Ass'n*, 436 S.W.3d at 65.

### B. The trial court did not abuse its discretion when it allowed Rodriguez to file a trial amendment clarifying his pleadings.

We turn first to Zarate's contention that the trial court abused its discretion when it allowed Rodriguez to file a trial amendment clarifying his allegations regarding the status of his real estate license during the times relevant to the litigation. We conclude Rodriguez's request was procedural in nature because he did not seek to introduce a new claim into the trial but instead sought to conform his pleadings to the evidence introduced during trial. *See id.* Because the amendment was procedural, the trial court had no discretion to deny it.[6] *Id.* We overrule Zarate's third issue.

---

[6] Even if we assumed that the trial court should have not granted Rodriguez's requested

## C.  The trial court did not abuse its discretion when it denied Zarate's request for a trial amendment.

We turn next to Zarate's second issue, in which she argues that the trial court abused its discretion by denying her requested trial amendment to add a cause of action seeking statutory penalties against Rodriguez for acting without a license. *See* Tex. Occ. Code Ann. § 1101.754 (authorizing statutory penalty of up to three times commission paid). Rodriguez objected to Zarate's request and the trial court denied it.

We begin our analysis by observing that Zarate's request to add a new cause of action came after the litigation had been ongoing for nearly five years, after a first trial of the case had ended in a mistrial, and after Rodriguez had rested his case in the second trial. Although Zarate's new cause of action was based on the same alleged facts, we still conclude it functioned as a surprise that would reshape the trial because Rodriguez could not have anticipated it in light of the development of the case up to the time Zarate made her request. *See AON Props., Inc. v. Riveraine Corp.*, No. 14-96-00229-CV, 1999 WL 12739, *19 (Tex. App.—Houston [14th Dist.] January 14, 1999, no pet.) (not designated for publication) ("We do not believe a defendant has a duty to decipher every potential cause of action that can be asserted from the facts alleged in a plaintiff's petition."). Zarate's request would also have detrimentally affected Rodriguez's presentation of his case because it was made after he had rested. *See Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.*, 927 S.W.2d 146, 155 (Tex. App.—Corpus Christi 1996, no writ) (holding trial court did not abuse discretion by denying trial amendment because party seeking amendment waited until close of evidence to make request to add affirmative defense based on

---

trial amendment, any error would have been harmless because we have already determined that Rodriguez's original pleading was adequate.

16

facts of which party was aware before trial started).  Finally, Zarate's new cause of action was a claim that, by exercising reasonable diligence, she could have discovered and asserted much earlier.  See *Geis*, 362 S.W.3d at 116; *Arroyo Shrimp Farm, Inc.*, 927 S.W.2d at 155.  We therefore hold that the trial court did not abuse its discretion when it denied Zarate's request.  We overrule Zarate's second issue.

### III. The trial court erred when it granted Rodriguez's no-evidence motion for summary judgment on Zarate's affirmative defenses, but the error was harmless except on the waiver defense.

Rodriguez filed two no-evidence motions for summary judgment, which the record shows the trial court partially granted.  In her fourth issue, Zarate contends the trial court erred when it partially granted Rodriguez's no-evidence motion for summary judgment on her affirmative defenses to Rodriguez's claim for breach of contract.  Zarate asserts in her fifth issue that the trial court erred when it granted Rodriguez's no-evidence motion for summary judgment on some of her counterclaims.

#### A. Standard of review

We review the trial court's grant of summary judgment de novo.  *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam).  In a no-evidence motion for summary judgment, the movant must specifically state the elements as to which there is no evidence.  *Walker v. Thomasson Lumber Co.*, 203 S.W.3d 470, 473–74 (Tex. App.—Houston [14th Dist.] 2006, no pet.).  The trial court must grant the motion unless the nonmovant files a response producing summary judgment evidence raising a genuine issue of material fact on each of the challenged elements.  Tex. R. Civ. P. 166a(i); *see San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 328 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("A no-evidence motion for summary judgment must be granted if the party

17

opposing the motion does not respond with competent summary-judgment evidence that raises a genuine issue of material fact.").

**B.    Subsequent events in the trial court rendered the trial court's error in granting Rodriguez's no-evidence motion on some of Zarate's affirmative defenses harmless.**

Rodriguez filed a no-evidence motion for summary judgment challenging Zarate's affirmative defenses to his claim for breach of contract. Rodriguez asserted Zarate "cannot provide competent admissible summary judgment evidence as to one or more element[s] of such defense." Zarate responded that Rodriguez's motion was conclusory because it did not challenge any of the specific elements of her affirmative defenses. Zarate then substantively responded to the motion and submitted summary judgment evidence. The trial court denied Rodriguez's motion as to Zarate's affirmative defenses of estoppel, justification, and prior material breach. Those defenses are therefore outside the scope of Zarate's fourth issue. The trial court granted the motion on the remainder of Zarate's affirmative defenses: fraud, unconscionability, duress, waiver, that Rodriguez's own acts and omissions caused his damages, and that Rodriguez's conduct excused Zarate's performance.

We agree with Zarate that the trial court erred in granting Rodriguez's no-evidence motion for summary judgment on some of her affirmative defenses because the motion did not point out the specific elements of the defenses on which there was no evidence. *See Foots v. Andrepoint*, No. 14-16-00435-CV, 2017 WL 124439 at *4, n.4 (Tex. App.—Houston [14th Dist.] Jan. 12, 2017, no pet.) (mem. op.) (noting movant's no-evidence summary judgment motion was defective because it "did not specifically identify any element [of the affirmative defenses] that lacked evidence"); *Walker*, 203 S.W.3d at 473–74. Subsequent events in the trial court can, however, render that error harmless. *See Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (citing Tex. R. App. P. 44.1). We therefore

18

examine those affirmative defenses on which the trial court granted summary judgment.

The trial court granted summary judgment on Zarate's affirmative defense alleging that Rodriguez's own acts and omissions caused his loss because he failed to procure a qualified renter, which Zarate believed he was required to do under the Listing Agreement. The trial court also granted summary judgment on Zarate's unconscionability affirmative defense, which was based on the same allegation: the failure to procure a qualified renter. Finally, the trial court granted summary judgment on Zarate's affirmative defense alleging that her performance under the contract was excused by Rodriguez's prior material breach.

Question 2 of the trial court's jury charge asked: "Was Zarate's failure to comply with the Listing Agreement or the Amendment to the Listing Agreement excused?" The jury was instructed that Zarate's failure to comply "is excused by [Rodriguez's] previous failure to comply with a material obligation of the Listing Agreement or the Amendment to Listing Agreement." The jury answered "No." Because the substance of the affirmative defenses mentioned above was submitted to the jury in Question 2, we conclude the trial court's error in granting the no-evidence motion was harmless. *See Progressive Cty. Mut. Ins. Co.*, 177 S.W.3d at 921; *Smith v. Moody Gardens, Inc.*, 336 S.W.3d 816, 821 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Because the jury found against Smith on the statutory claim, that finding negates recovery for the common law claims" because they were substantively the same); *Mo. Pac. R.R. Co. v. Lemon*, 861 S.W.2d 501, 515 (Tex. App.—Houston [14th Dist.] 1993, writ dism'd) ("[T]he trial court does not err in refusing a requested instruction if the substance of the matter contained in the requested instruction was included in the court's charge.").

The trial court also granted summary judgment on Zarate's affirmative

defense of fraud. We conclude this error was harmless as well because the trial court submitted Zarate's common-law and statutory fraud claims for affirmative relief, containing similar elements, in Question 6. The jury answered "No." *See Progressive Cty. Mut. Ins. Co.*, 177 S.W.3d at 921; *Smith*, 336 S.W.3d at 821; *Lemon*, 861 S.W.2d at 515.

### C. The trial court's error in granting summary judgment on Zarate's waiver defense was not harmless.

Finally, the trial court granted no-evidence summary judgment on Zarate's affirmative defense of waiver.[7] The elements of the affirmative defense of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish that right, or intentional conduct inconsistent with that right. *KBG Inv., LLC v. Greenspoint Prop. Owners' Ass'n, Inc.*, 478 S.W.3d 111, 114 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Rodriguez did not specify which of these elements lacked evidence, as he was required to do.[8] We conclude the trial court's error in granting the motion was not harmless because the substance of the waiver defense was not submitted to the jury in any other question. *See Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W.3d 140, 164 (Tex. App.—Eastland 2010, pet. denied) (reversing summary judgment because party's negligence per se claims were not cumulative of other claims and trial court's summary judgment prevented party from developing

---

[7] Zarate also alleged an affirmative defense of estoppel. The trial court denied Rodriguez's motion on that defense. The court subsequently granted Rodriguez a directed verdict on that defense—a decision Zarate has not appealed. Zarate has also not appealed the trial court's summary judgment on her affirmative defense of duress.

[8] Given Rodriguez's failure to address any of these elements, we need not consider whether the first element is one that a defendant like Zarate bears the burden to prove in order to prevail on an affirmative defense of waiver (and thus could be the subject of a no-evidence motion by Rodriguez), or whether an existing right is sometimes an element of the plaintiff's cause of action—here, Rodriguez's claim for breach of contract—on which it bears the burden of proof.

20

that claim during trial and submitting it to jury). We therefore sustain Zarate's fourth issue in part and reverse the trial court's no-evidence summary judgment on Zarate's affirmative defense of waiver.

**IV.     Because Zarate did not file a response to Rodriguez's no-evidence motion for summary judgment on her counterclaims, the trial court did not err when it granted the motion on some of those claims.**

Zarate argues in her fifth issue that the trial court erred when it granted Rodriguez's no-evidence motion on some of her counterclaims. Because Zarate did not file a response to Rodriguez's motion, we disagree.

Rodriguez initially filed a no-evidence motion for summary judgment challenging Zarate's counterclaims, styled "Plaintiffs' No–Evidence Motion for Summary Judgment," in September 2011. Zarate filed a response to this motion in October 2011. There is no indication in the appellate record that the trial court ruled on the 2011 no-evidence motion.

Rodriguez filed a second no-evidence motion for summary judgment challenging Zarate's counterclaims in March 2014. Rodriguez styled his second no-evidence motion "Full, or in the Alternative, Partial 'No-Evidence' Motion for Summary Judgment on Each of [Zarate's] Counterclaims." In her brief, Zarate asserts that she filed a response to this motion and she directs this Court to her response to Rodriguez's 2011 no-evidence motion.

Contrary to Zarate's representation, the appellate record does not contain a response to Rodriguez's 2014 no-evidence motion. Zarate's 2011 response was file-stamped "September 31, 2011 [sic]." Although the appellate record indicates that Zarate refiled this same response on January 26, 2016, there is nothing in the record indicating that Zarate notified the trial court that it should consider the 2011 response as a response to the 2014 motion. *See Carter v. City of Garland*, No. 05-16-00903-

21

CV, 2017 WL 2118785, at *3 (Tex. App.—Dallas May 16, 2017, no pet.) (mem. op.) ("[N]ot only did appellant fail to raise the issue in his response to the amended motion, he did not present any evidence on the issue, incorporate the evidence attached to the previous filing, or ask the trial court to take judicial notice of the prior evidence. Having failed to do so, we cannot conclude the evidence was properly before the court."); *cf. Galindo v. Snoddy*, 415 S.W.3d 905, 914 (Tex. App.— Texarkana 2013, no pet.) ("When a response to a motion for summary judgment explicitly incorporates evidence attached to another summary judgment response in the same file, Texas courts have held that the trial court should consider the referenced evidence."). Zarate's failure to respond to Rodriguez's motion "is fatal to her ability to successfully assert on appeal that the trial court erred in granting the [no-evidence motion for summary judgment]." *Transcontinental Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 692 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Because Zarate did not file a response, the trial court was required to grant Rodriguez's motion. *See* Tex. R. Civ. P. 166a(i); *Transcon. Ins. Co.*, 321 S.W.3d at 692. We overrule Zarate's fifth issue.

## V. The scope of remand is limited to waiver and attorney's fees.

Having addressed each of Zarate's issues, we now consider the proper disposition of this appeal. After the trial court granted summary judgment on some of Zarate's counterclaims and affirmative defenses, other issues were tried to a jury, which found that Zarate had breached the contract and awarded damages to Rodriguez. The trial court also awarded Rodriguez his attorney's fees. Although we have overruled most of Zarate's issues, we have held that the trial court reversibly erred when it granted summary judgment on Zarate's waiver defense. Accordingly, we must determine the scope of our remand for further proceedings in the trial court. *See* Tex. R. App. P. 43.2(d). Under Texas Rule of Appellate Procedure 44.1(b), "[i]f

22

the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error." *See also Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) ("When this court remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue.").

In this case, the trial court's error removed consideration of an affirmative defense from the jury. An affirmative defense is "a denial of the plaintiff's right to judgment even if the plaintiff establishes every allegation in its pleadings." *Bracton Corp. v. Evans Constr. Co.*, 784 S.W.2d 708, 710 (Tex. App.—Houston [14th Dist.] 1990, no writ). Affirmative defenses allow a defendant to introduce evidence of an independent reason why a plaintiff should not recover. *Id.* Because waiver would be an independent reason why Rodriguez should not recover on his claim for breach of contract, we conclude it can be separately addressed in a new trial without unfairness to either party.[9] Further, in the original judgment, Rodriguez recovered attorney's fees pursuant to chapter 38 of the Civil Practice and Remedies Code. Resolution of the new trial may impact Rodriguez's entitlement to and amount of attorney's fees. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). We therefore also remand Rodriguez's request for attorney's fees for a new trial.[10]

## CONCLUSION

Having sustained part of Zarate's fourth issue, we reverse the trial court's judgment and remand the case to the trial court for further proceedings solely on

---

[9] The issues of Zarate's breach and resulting damages need not be retried because the damages awarded by the jury can be included in a new judgment if Zarate does not prevail on her waiver defense.

[10] Our remand does not preclude the filing of appropriate motions, including motions for summary judgment, that may resolve the remaining issues without another trial.

Zarate's affirmative defense of waiver and a determination of the impact, if any, of such proceedings on Rodriguez's request for an award of attorney's fees.  Tex. R. App. P. 43.2(d), 44.1(b).


                                        /s/      J. Brett Busby
                                                 Justice


Panel consists of Justices Boyce, Busby, and Wise.