**Affirmed and Majority and Dissenting Opinions filed November 27, 2018.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-17-00103-CV

_____

### SAFECO INSURANCE COMPANY OF AMERICA, Appellant

### V.

### CLEAR VISION WINDSHIELD REPAIR, LLC, ELIZABETH DUTSON, BRUCE HOUCK, GREG HINEMAN, MATTHEW O'NEILL, AND JAMES MCCUBBIN, Appellees

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-03748**

## M A J O R I T Y   O P I N I O N

This case concerns waiver of anti-assignment clauses in insurance policies. Appellee Clear Vision Windshield Repair, LLC repaired chips in the windshields of appellant Safeco Insurance Company's insureds, the individual appellees. Clear Vision submitted invoices to Safeco for the cost of the windshield repairs. Clear

Vision asserted it was entitled to payment because Safeco's insureds had assigned their right to payment under their insurance policies to Clear Vision. When Safeco refused to pay four of Clear Vision's invoices, Clear Vision sued Safeco alleging numerous causes of action, including breach of contract. During the resulting bench trial, Safeco argued Clear Vision did not have standing because the insurance policies at issue contained anti-assignment clauses. Clear Vision responded that it had standing because, among other reasons, Safeco had waived enforcement of the clauses. The trial court agreed with Clear Vision and signed a final judgment in its favor.

Safeco challenges that judgment in four issues. We need only address Safeco's third issue because it is dispositive. In that issue, Safeco argues that the evidence is legally and factually insufficient to support the trial court's finding that it had waived enforcement of the anti-assignment clauses in the insurance policies. Because we conclude sufficient evidence supports the trial court's waiver finding, we overrule Safeco's third issue and affirm the trial court's judgment.

## BACKGROUND

Safeco is an automobile insurance company operating in Texas and other states. Safeco designates an exclusive third-party administrator, Safelite, to handle its insureds' claims of automobile glass damage nationwide. Safeco authorizes Safelite to pay glass repair vendors directly. Despite having an exclusive third-party administrator, Safeco will also handle and pay directly any glass repair claims submitted to it rather than to Safelite. Julian Winfield, Safeco's only witness at trial, testified that Safelite does not have the authority to enforce an anti-assignment clause for any glass repair claim submitted to it for payment. Winfield also testified that during his time at Safeco, he had never experienced the anti-assignment clause being enforced as to any glass repair claim.

2

Clear Vision is in the business of repairing chips in automobile windshields. Clear Vision conducts business inside automobile dealership repair shops. When a customer with a chipped windshield comes into a dealership where Clear Vision operates, a Clear Vision representative asks if the customer would like the windshield repaired. Clear Vision charges a flat rate of $150 to repair a chipped windshield. If the customer agrees to the repair and has insurance, Clear Vision verifies the insurance information from the customer's insurance card. Clear Vision does not confirm insurance coverage with Safeco before performing the repairs. Clear Vision makes the repair after the customer signs an assignment of his right to payment under the policy, as well as any cause of action he might have if the insurance company fails to pay. Once the repair is completed, Clear Vision submits an invoice to each customer's insurance company seeking direct payment for the repair. Because Clear Vision does not contact the insurance company before it makes a windshield repair, Clear Vision knows it runs the risk that it might not be paid when it takes an assignment of rights from its customers.

According to Douglas Stroh, president of Clear Vision, Clear Vision has submitted thousands of glass repair claims to Safeco since 2011. Clear Vision does not have a contractual relationship with Safeco as a preferred provider or otherwise. As a result, for each windshield Clear Vision repairs, its first contact with Safeco is when it sends an invoice for the completed repair. Stroh estimated that when Clear Vision submits invoices directly to Safeco, Safeco pays those invoices about eighty-five percent of the time despite the lack of a contractual relationship between Clear Vision and Safeco. Safeco usually pays the full amount of the invoice. As to the unpaid invoices, Safeco did not give the anti-assignment clause as the reason for non-payment. When Clear Vision submits invoices to Safelite, Safelite typically does not pay the full amount. According to Stroh, Safelite has never informed Clear

Vision that it could not pay Clear Vision's invoices. Nor has Safelite raised the anti-assignment clause as a reason to not pay a Clear Vision invoice. Safeco does not dispute that it sometimes pays Clear Vision's invoices directly, but it asserts that it does so only as a convenience to its insureds.

Clear Vision repaired chips in the windshields of automobiles owned by individual appellees Elizabeth Dutson, Bruce Houck, Matthew O'Neill, and James McCubbin. It is undisputed that Safeco issued automobile insurance policies to these four individual appellees, the policies were in effect on the dates of loss and provided coverage for windshield repairs, and this coverage was not subject to a deductible. Each of the insureds' policies contained the following anti-assignment clause: "Your rights and duties under the policy may not be assigned without our [i.e., Safeco's] written consent." All four of the insureds signed documents assigning to Clear Vision their right to payment for the windshield repairs, as well as their causes of action in the event Safeco failed to pay for the repairs. It is undisputed that Safeco did not consent in writing to any of the insureds' assignments. It is also undisputed that Clear Vision did not contact Safeco seeking permission for an assignment of the insureds' policy benefits.

After Clear Vision had repaired the insureds' windshields, Clear Vision submitted invoices directly to Safeco for payment. The invoices included the assignments from the insureds. Safeco eventually paid Clear Vision $150 each on the invoices for the Dutson, Houck, and McCubbin repairs. Safeco did not pay the O'Neill invoice. The trial court found that Safeco rejected the O'Neill invoice because it did not include sales tax. Safeco did not notify Clear Vision that it was refusing to pay the O'Neill invoice because of the anti-assignment clause in O'Neill's policy.

Clear Vision filed suit on its own behalf and on behalf of the individual

4

insureds against Safeco, alleging breach of contract. Regarding the invoices Safeco paid, Clear Vision argued Safeco had breached the insurance policies because the payments were not timely. The dispute went to trial before the bench. At the conclusion of the one-day bench trial, the trial court signed a final judgment in favor of Clear Vision. The judgment awarded Clear Vision damages of $150, prejudgment and post-judgment interest, and $14,000 in attorney's fees.

The trial court subsequently filed findings of fact and conclusions of law. Among other findings, the trial court found that Safeco had waived enforcement of the anti-assignment clauses in the insurance policies at issue here. It also found that the four Safeco insureds had assigned to Clear Vision their right to insurance benefits available for their windshield repairs, as well as their causes of action for any failure by Safeco to pay for the repairs. The trial court also concluded that Safeco had failed to comply with the four individual plaintiffs' insurance policies. This appeal followed.

## ANALYSIS

Safeco raises four issues on appeal. Because we ultimately conclude that Safeco waived enforcement of the anti-assignment clauses, we need only address Safeco's third issue, which challenges the legal and factual sufficiency of the evidence supporting the trial court's waiver finding.[1]

## I. Standard of review

When a trial court makes specific findings of fact and conclusions of law

---

[1] Safeco's first two issues address the enforceability of the anti-assignment clauses. Safeco's fourth issue challenges the trial court's finding that Clear Vision had an implied-in-fact contract with Safeco, an alternative basis supporting the judgment. Because we conclude Safeco waived the anti-assignment clauses and Clear Vision had standing as a result of the insureds' assignments, we need not reach these issues. *See* Tex. R. App. P. 47.1.

5

following a bench trial and a reporter's record is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 789 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Findings of fact have the same force and dignity as a jury's verdict and are reviewable under the same standards of legal and factual sufficiency. *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 646 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that there is no evidence to support the adverse finding. *Univ. Gen. Hosp., L.P. v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it. *Id.* at 550–51 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex. 2005)). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.* at 551. This Court must credit favorable evidence if a reasonable trier of fact could and disregard contrary evidence unless a reasonable trier of fact could not. *Id.* The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* If there is more than a scintilla of evidence supporting a finding of fact, we will overrule a legal sufficiency challenge. *CA Partners v. Spears*, 274 S.W.3d 51, 69 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

When a party challenges the factual sufficiency of the evidence supporting a finding on which it did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly

wrong and unjust. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Nip v. Checkpoint Sys., Inc.*, 154 S.W.3d 767, 769 (Tex. App.—Houston [14th Dist.] 2004, no pet.) In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *See Ellis*, 971 S.W.2d at 406–07; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

This Court is not a factfinder. *Ellis*, 971 S.W.2d at 407. Instead, the trier of fact, in this case the trial court, is the sole judge of the credibility of the witnesses and the weight to afford their testimony. *Pascouet*, 61 S.W.3d at 615–16. Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the trial court, even if the evidence would support a different result. *Id.* If we determine that the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the challenged finding; we need not do so when we affirm. *See Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006) (per curiam).

We review a trial court's conclusions of law de novo. *Trelltex, Inc.*, 494 S.W.3d at 790. When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Id.* To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Id.*

7

**II.** **Sufficient evidence supports the trial court's finding that Safeco waived enforcement of the anti-assignment clauses found in the insurance policies.**

Individual appellees Dutson, Houck, O'Neill, and McCubbin had automobile insurance policies with Safeco, and the trial court concluded that these policies covered the glass repairs that Safeco performed. In Texas, insurance policies are interpreted according to the general rules governing construction of contracts. *Gastar Expl. Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Each individual appellee assigned his or her right under these contracts to receive payment from Safeco for the repairs—as well as their causes of action for any non-payment—to Clear Vision. As assignee, Clear Vision can sue Safeco to enforce these contractual rights unless the anti-assignment clauses of the policies apply. *See generally Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at *14–15 (Tex. App.—Dallas Nov. 4, 2015, no pet.) (discussing assignee's ability to sue on contract).

Anti-assignment clauses are enforceable unless rendered ineffective by a statute or through the application of contract law. *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 721 (Tex. App.—Dallas 2004, no pet.). Under contract law, a party may waive rights included in the contract for its benefit. *Id.* at 722. In particular, an anti-assignment clause in an insurance contract can be waived. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget*, 649 F.Supp.2d 613, 623 (S.D. Tex. 2009); *Johnson*, 148 S.W.3d at 722; *see also Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 574 (5th Cir. 1992), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012). "[A] waiver is unilateral in character; it results as a legal consequence from some act or conduct of the party against whom it operates; and no act of the party in whose

8

favor it is made is necessary to complete it." *Johnson*, 148 S.W.3d at 722.

The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish that right, or intentional conduct inconsistent with claiming that right. *Zarate v. Rodriguez*, 542 S.W.3d 26, 40 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).[2] Safeco challenges the third element here. Waiver generally is a question of fact to be resolved by the trier of fact. *Straus v. Kirby Court Corp.*, 909 S.W.2d 105, 108 (Tex. App.—Houston [14th Dist.] 1995, writ denied). A party's express renunciation of a known right can establish waiver. *Johnson*, 148 S.W.3d at 722. A party's silence or inaction for a period of time long enough show an intention to yield the known right is also enough to establish waiver. *Id.*

The trial court found that Safeco waived the right to enforce the anti-assignment clauses, and we conclude this finding is supported by legally and factually sufficient evidence. The record shows—and the court found—that Safeco paid Clear Vision's invoices for the Dutson, Houck, and McCubbin repairs. Safeco's intentional conduct in paying Clear Vision for these repairs is inconsistent with Safeco's later claim that it owed Clear Vision nothing because it had not consented to Dutson, Houck, and McCubbin assigning Clear Vision their rights to payment under the policies. *See Zarate*, 542 S.W.3d at 40 (explaining that waiver may be based on "intentional conduct inconsistent with [claiming a party's existing] right"); *Trelltex, Inc.*, 494 S.W.3d at 793 (holding intentional conduct in accepting payment of certain percentage commission was inconsistent with later claim of

---

[2] Safeco argues on appeal that Clear Vision also had to show prejudice from enforcement of the right. But prejudice is only a necessary component of waiver in certain situations, and Safeco has not cited—nor have we found—any cases requiring a showing of prejudice before finding waiver of an anti-assignment clause.

contractual right to receive higher percentage); *see also Encompass Office Sol., Inc. v. La. Health Serv. & Indem. Co.*, No. 3:11–CV–1471–P, 2013 WL 12310676, at *10 (N.D. Tex. Sept. 17, 2013) (holding fact issue existed whether health insurer waived anti-assignment clause by paying assignee directly).

As to the O'Neill repair, the trial court found that Safeco rejected Clear Vision's invoice "because the invoice did not include sales tax." There is no evidence that Safeco's rejection was a refusal to pay the claim under any circumstances, that Safeco rejected the invoice because it had not consented to O'Neill assigning Clear Vision his right to payment under the policy, or that Clear Vision was aware of the anti-assignment clause until Safeco asserted it in this litigation. To the contrary, the trial court found that "Safeco did not inform Clear Vision or the Individual Plaintiffs that it consider[ed] the assignments signed by its insureds to be void until it made such arguments in the course of defending this lawsuit." Safeco does not argue that this finding is unsupported by the evidence.

Other courts have held that a fact issue exists on waiver of an anti-assignment clause when one party to a contract (1) refuses to pay another party's assignee, (2) gives an explanation for its refusal that does not rely on the anti-assignment clause, and (3) fails to invoke the clause until litigation ensues. *Tex. Dev. Co. v. Exxon Mobil Corp.*, 119 S.W.3d 875, 883–85 (Tex. App.—Eastland 2003, no pet.); *see also La. Health Serv. & Indem. Co.*, 2013 WL 12310676, at *10 (holding fact issue existed whether health insurer waived anti-assignment clause by denying claim on different basis). Likewise, we conclude that Safeco's decision not to pay Clear Vision's invoice on the ground that it did not include sales tax, as well as Safeco's failure to invoke the anti-assignment clause until Clear Vision sued, supports the trial court's finding that Safeco waived enforcement of the anti-assignment clause in O'Neill's policy. *Id.*

10

Although this evidence alone is legally and factually sufficient to support the trial court's waiver finding as to the O'Neill repair, we note there is additional evidence indicating that Safeco's delay in invoking the anti-assignment clause was unreasonable. *See Encompass Office Sol., Inc. v. Conn. General Life Ins. Co.*, No. 3:11-CV-02487-L, 2017 WL 3268034, at *13 (N.D. Tex. July 31, 2017) (holding health insurer waived anti-assignment clause where it "delay[ed] unreasonably in asserting the existence of the anti-assignment clause in response to a request for payment pursuant to an unambiguous assignment"); *Johnson*, 148 S.W.3d at 722 (explaining that silence or inaction for period long enough to show intention to yield known right is enough to prove waiver of anti-assignment clause). Safeco has not challenged the trial court's finding that it "had notice of the claim for repairs to the O'Neill vehicle no later than July 16, 2014." Yet Safeco did not raise the anti-assignment clause until after Clear Vision filed this suit in January 2015.

Safeco's six-month delay in raising the anti-assignment clause was atypical. The record includes evidence that Safeco's policy is to issue payment within 30 days of determining coverage and receiving all necessary information. *See also* Tex. Ins. Code § 541.060(a)(2)(A) (West 2009) (defining as an unfair settlement practice an insurer's failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim for which the insurer's liability is reasonably clear). In addition, Stroh testified that Clear Vision had billed Safeco directly for approximately 2,500 windshield repairs since 2011, and Safeco paid eighty-five percent of the invoices. Regarding the fifteen percent of invoices that were not paid, Safeco never gave the anti-assignment clause as the reason for non-payment. According to Stroh, Safeco never informed Clear Vision that it needed Safeco's written consent for any assignments of insureds' claims. Under these circumstances, the fact-finder could conclude that Safeco's delay of six months in asserting its anti-

11

assignment right—which it had never before asserted in connection with similar claims involving other policies—was unreasonable and showed Safeco's intention to yield that right. *See Conn. General Life Ins. Co.*, 2017 WL 3268034, at *13; *Johnson*, 148 S.W.3d at 722.

We do not address whether—as some courts have held—an insurer can waive its right to enforce anti-assignment clauses in the policies at issue through a "course of dealing" of paying the same assignee under similar policies issued to different insureds. *E.g., La. Health Serv. & Indem. Co.*, 2013 WL 12310676, at *10. Rather, we conclude only that the trier of fact could consider Safeco's practice regarding other policies when deciding whether Safeco delayed unreasonably in invoking the anti-assignment clause of the O'Neill policy.

Having reviewed the entire record, we hold there is legally and factually sufficient evidence supporting the trial court's finding that Safeco waived enforcement of the anti-assignment clauses in the individual appellees' insurance policies. *See Zarate*, 542 S.W.3d at 40 (waiver by intentional conduct inconsistent with claiming a right); *Johnson*, 148 S.W.3d at 722 (waiver by silence or inaction for period long enough to show intention to yield known right). Given these waivers, the assignments signed by the individual appellees provided Clear Vision with standing to assert their claims for breach of contract against Safeco.[3] We overrule Safeco's third issue.

---

[3] Because the evidence supports the trial court's finding that Safeco waived enforcement of the anti-assignment clauses, we do not reach the trial court's alternative conclusion that the anti-assignment clauses apply only to "rights and duties under the policy" and thus did not prevent the individual appellees from assigning causes of action arising from breach of the policy. *See Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 211–12 (Tex. App.—El Paso 2010, pet. denied); *but cf. Tex. Farmers Ins. Co. v. Gerdes ex rel. Griffin Chiropractic Clinic*, 880 S.W.2d 215, 218–19 (Tex. App.—Fort Worth 1994, writ denied) (holding clause prohibiting assignment of "rights and duties" barred post-loss assignment of cause of action against insurer).

## CONCLUSION

Having overruled Safeco's third issue, the only issue necessary for a final disposition of this appeal, we affirm the trial court's judgment.


/s/    J. Brett Busby
        Justice


Panel consists of Chief Justice Frost and Justices Busby and Wise (Frost, C.J., dissenting).