**Affirmed in Part, Reversed and Remanded in Part, and Majority and Concurring and Dissenting Opinions filed December 8, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-01023-CV

---

### DENNIS FULLER AND LUCIE LAFRENIERE, Appellants

### V.

### RONY-CLAUDE LE BRUN AND EQUINOX DESIGN, INC., Appellees

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-36720**

---

## M A J O R I T Y   O P I N I O N

Appellants Dennis Fuller and Lucie Lafreniere's ("Appellants") home was damaged during Hurricane Ike. Appellants hired appellee Equinox Design, Inc. to design and build a new home on their damaged home's existing foundation. Disputes arose over the progress and quality of the work and Appellants sued Equinox and its owner, Rony-Claude Le Brun (together with Equinox, "Appellees"), alleging numerous claims.

The trial court granted a partial summary judgment on Appellants' tort claims and their remaining contractual claims proceeded to trial before a jury. The jury rendered a take-nothing verdict on those claims and the trial court signed a take-nothing judgment based on that verdict. On appeal, Appellants challenge only the trial court's partial summary judgment.

We affirm in part the trial court's judgment regarding the partial summary judgment with respect to Appellants' negligence, breach of warranty, breach of fiduciary duty, Property Code chapter 162 ("Trust Fund Act"), and Texas Deceptive Trade Practices Act claims. We conclude the trial court erred when it rendered summary judgment on Appellants' fraud claims. We reverse in part the trial court's judgment regarding the partial summary judgment and remand the case to the trial court for further proceedings limited to Appellants' fraud claims.

## BACKGROUND

Equinox is a Houston-based home design and construction company owned by Le Brun. Le Brun and Lafreniere knew each other socially. According to Lafreniere, Le Brun told her he was an "architect" when she first met him before Hurricane Ike in 2008.

After Hurricane Ike damaged Appellants' home, Appellants decided to tear down their original house and build a new one. According to Lafreniere, she and Le Brun discussed repairing the home, during which Le Brun continued to represent that he was an architect. On January 18, 2010, Lafreniere and Equinox signed a contract providing that Equinox would demolish the old structure and build a new structure on the site. Lafreniere initially paid Equinox $50,000. Equinox began work soon after the contract was signed.

Appellants quickly became dissatisfied with Equinox's work. The initial

source of dissatisfaction was Equinox's requests for payments from Appellants while failing to provide Appellants with documentation supporting the cost of the project. Appellants continued to pay despite this lack of accounting. The relationship between Appellants and Equinox deteriorated until, according to Appellants, Equinox ceased work on the unfinished project in 2014. Appellants delivered a demand to Equinox in March 2015 invoking Chapter 27 of the Texas Property Code, the Residential Construction Liability Act (the "RCLA"). The demand included a list of hundreds of alleged construction defects in the house. The demand sought a response from Equinox in compliance with the provisions of the RCLA. Equinox did not make an offer to repair in response to Appellants' demand.

Appellants sued Appellees and, in their third amended petition, asserted claims for breach of contract, negligence, breach of the implied warranties of good and workmanlike construction and habitability, violations of the Texas Deceptive Trade Practices Act (the "DTPA") (*see* Tex. Bus. & Com. Code Ann. §§ 17.41-.63), breach of the Trust Fund Act, fraud, and breach of fiduciary duty. Appellees moved for summary judgment on all of Appellants' claims, asserting both no-evidence and traditional grounds. Appellees also filed a "Supplemental Motion for Summary Judgment," asserting the applicable statutes of limitation as an additional ground entitling them to summary judgment.

In its April 28, 2017 order, the trial court granted in part Appellees' summary judgment motion and the supplement thereto. The trial court dismissed Appellants' tort claims and denied the motion with respect to Appellants' breach of contract claim.

Appellants' breach of contract claim proceeded to trial before a jury. At the conclusion of evidence, the charge asked the jury two relevant questions with

3

respect to Appellees' liability; the jury responded "No" to both questions. The trial court signed a take-nothing judgment in Appellees' favor. Appellants timely appealed and challenge only the trial court's partial summary judgment on their tort claims.

ANALYSIS

In their motion for summary judgment and supplement thereto, Appellees asserted the following challenges to Appellants' tort claims:

1. Appellants cannot bring forth any evidence to support their tort claims.

2. Appellants' tort claims are barred by the applicable statutes of limitation.

3. The economic loss rule bars Appellants' tort claims.

4. The one-satisfaction rule precludes Appellants' recovery.

Appellants challenge these bases on appeal and, in response, Appellees argue the grounds are sufficient to support the trial court's partial summary judgment. Appellees also contend that any error with respect to the trial court's partial summary judgment is rendered harmless in light of the jury's responses to the charge questions.

We begin by examining Appellees' harmless-error contention before addressing the individual arguments raised in Appellees' summary judgment motion and supplement.

## I.  Effect of Jury's Findings

A judgment may be reversed on appeal on the ground that the trial court made an error of law only if the complained-of error (1) probably caused the rendition of an improper judgment, or (2) probably prevented the appellant from properly presenting the case to the court of appeals. Tex. R. App. P. 44.1. But

4

subsequent events in the trial court may render the erroneous grant of a motion for summary judgment harmless. *See Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (per curiam) ("We conclude that the subsequent events, being properly before the court of appeals and this Court, should be considered in determining harm from the trial court's grant of summary judgment."). We therefore examine the claims on which the trial court granted the motion for summary judgment in light of the jury's answers to the questions in the charge. *See id.* ("In this case, the breach of contract claim was fully litigated after the summary judgment [on Boyd's extra-contractual claims] was granted. The subsequent trial, jury finding, and take-nothing judgment which was affirmed on appeal as to Boyd's coverage claim negate Boyd's extra-contractual claims."); *Zarate v. Rodriguez*, 542 S.W.3d 26, 40 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding that the trial court's error in rendering summary judgment on affirmative defense was harmless because substance of affirmative defense was submitted to the jury).

Here, the jury responded as follows to the questions assessing Appellees' liability:

Question No. 1

Did Equinox Design, Inc. fail to comply with the agreement?

Equinox failed to comply with the agreement if it constructed a defective and not code-compliant home.

Answer: No

*       *       *

Question No. 5

Has Equinox Design, Inc. been unjustly enriched at [Appellants'] expense?

Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be

5

unconscionable to retain. A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage.

Answer: No

The jury's "No" response to Question No. 1 renders harmless any error the trial court may have made when it granted the motion for summary judgment on Appellants' negligence, breach of warranty, and DTPA claims. In Appellants' third amended petition, these claims were premised on the following allegations:

- Negligence: Equinox breached the duty "to construct [Appellants'] home in a good and workmanlike manner" by "constructing a home that is plagued with construction defects."

- Breach of warranty: Equinox breached the implied warranties of good and workmanlike condition and habitability because of "poor construction."

- DTPA: Equinox "violated the DTPA when it breached the implied warranty of good and workmanlike construction of residential property."

In response to Question No. 1, the jury found that Equinox did not construct a defective home. This finding goes to the substance of Appellants' negligence, breach of warranty, and DTPA claims, *i.e.*, whether Equinox's construction of Appellants' home was defective or failed to comply with relevant codes. Therefore, the jury's negative answer to Question No. 1 renders harmless any error the trial court may have made when it granted the motion for summary judgment on these claims. *See Progressive Cty. Mut. Ins. Co.*, 177 S.W.3d at 921; *see also, e.g., Zarate*, 542 S.W.3d at 39-40.

But the same cannot be said with respect to Appellants' Trust Fund Act, breach of fiduciary duty, and fraud claims. In relevant part, Appellants pleaded the following allegations to support these claims:

6

- Trust Fund Act: Appellees were trustees with respect to funds paid by Appellants. Appellees misapplied these funds by (1) "divert[ing] the funds and materials away from [Appellants'] construction project"; (2) using the materials purchased by Appellants "in the construction of [Le Brun's] home and on another project"; and (3) "fail[ing] to maintain a construction account and maintain an account record that complies with Texas Property Code 162.007."

- Breach of fiduciary duty: Appellees "breached their fiduciary duty by not fairly dealing with [Appellants] during the construction, and misappropriating funds and materials among other examples."

- Fraud: Le Brun "misrepresented himself as an architect." Le Brun made this representation "recklessly and without knowledge of its truth" and "with the intent for [Appellants] to act on it."

The substance of these claims was not submitted to the jury. Neither Question No. 1 nor Question No. 5 asked the jury to make liability determinations with respect to the following allegations: (1) Appellees' misapplication of trust funds (including whether Appellees maintained a construction account); (2) Appellees' breach of a fiduciary duty; or (3) Le Brun's statements with respect to his status as an architect.[1] Accordingly, any error the trial court may have made in granting summary judgment on Appellants' Trust Fund Act, breach of fiduciary duty, and fraud claims was not harmless in light of the jury's answers to questions in the charge. *See Zarate*, 542 S.W.3d at 41 ("We conclude the trial court's error in granting the motion was not harmless because the substance of the waiver defense was not submitted to the jury in any other question.").

In sum, any error the trial court may have made with respect to the partial summary judgment on Appellants' negligence, breach of warranty, and DTPA

---

[1] Moreover, at the pre-trial hearing on Appellees' motion in limine, Appellees argued that Appellants should not be permitted to mention the fact that Le Brun was not an architect during trial because "[t]he architect component purely goes to fraud, and that's been dismissed." The trial court granted Appellees' motion. At trial, Appellants did not introduce evidence that Le Brun was not an architect.

claims is harmless. We proceed to examine Appellees' summary judgment arguments raised with respect to Appellants' Trust Fund Act, breach of fiduciary duty, and fraud claims to determine whether partial summary judgment may be sustained on those grounds.

## II. No-Evidence Summary Judgment Motion

We review the trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, the trial court's order does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any theories advanced are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). When a party moves for summary judgment on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017).

In a no-evidence summary judgment motion, the movant asserts there is no evidence of one or more essential elements of a claim for which the nonmovant bears the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The motion must state the specific elements as to which there is no evidence. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 695 (Tex. 2017).

Responding to a no-evidence motion, the nonmovant must present more than a scintilla of probative evidence that raises a genuine issue of material fact supporting each element contested in the motion. *First United Pentecostal Church of Beaumont*, 514 S.W.3d at 220. More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). The nonmovant "is not

8

required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam) (internal quotation omitted). In reviewing a no-evidence summary judgment, all evidence favorable to the nonmovant is taken as true and we draw every reasonable inference and resolve all doubts in the nonmovant's favor. *Moore v. Bushman*, 559 S.W.3d 645, 649 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

In the trial court, Appellees moved for a no-evidence summary judgment on Appellants' Trust Fund Act, breach of fiduciary duty, and fraud claims. We examine these claims individually.

## A. Trust Fund Act

The Trust Fund Act is intended to serve as special protection for unpaid subcontractors and materialmen when contractors refuse to pay them for labor and materials. *See* Tex. Prop. Code Ann. §§ 162.001-.033; *see also Choy v. Graziano Roofing of Tex., Inc.*, 322 S.W.3d 276, 282 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The Trust Fund Act imposes fiduciary responsibilities on contractors to ensure subcontractors, mechanics, and materialmen are paid for the work they complete. *Kelly v. Gen. Interior Constr., Inc.*, 262 S.W.3d 79, 84-85 (Tex. App.—Houston [14th Dist.] 2008), *rev'd in part on other grounds*, 301 S.W.3d 653 (Tex. 2010).

In 2009, the Legislature extended the Trust Fund Act's protections to property owners "in connection with a residential construction contract." *See* Act of May 19, 2009, 81st Leg., R.S., ch. 1277, § 3, 2009 Tex. Gen. Laws 4029, 4029 (codified at Tex. Prop. Code Ann. § 162.003(b)). These protections require a contractor who enters into a written contract with a property owner to construct improvements on a residential homestead for an amount exceeding $5,000 to

deposit the trust funds (*i.e.*, the payments from the property owner) into a construction account in a financial institution. Tex. Prop. Code Ann. §§ 162.001(a), 162.006(a). A contractor required to keep a construction account "shall maintain an account record for the construction account that provides information relating to: (1) the source and amount of the funds in the account and the date the funds were deposited; (2) the date and amount of each disbursement from the account and the person to whom the funds were disbursed; and (3) the current balance of the account." *Id*. § 162.007(a).

Citing the elements in section 162.007(a), Appellees argued in their no-evidence motion that Appellants could not produce any evidence "of either [Appellees'] maintenance or lack thereof of a trust account." In response, Appellants pointed to the following testimony from Le Brun's deposition:

Q. Does Equinox currently have a bank account?

A. Yes.

Q. And is that bank account — does it have separate accounts for different projects?

A. No, sir.

Q. Okay. So it's just one account?

A. Yes, sir.

Q. And it's in Equinox's name?

A. Yes, sir.

In addition, Appellants also produced testimony from Lafreniere's deposition in which she stated that: (1) she did not see any documents from Le Brun "breaking down how those costs were allocated" to get to the final price for the construction project; (2) Le Brun was "supposed to provide [Lafreniere] detailed accountings along the way which he did not"; and (3) she did not "see any of the accountings or receipts that were promised" from January 2010 through the end of 2011. This

10

evidence, considered in the light most favorable to Appellants, would enable reasonable and fair-minded people to conclude that Appellees did not maintain the construction account required by section 162.007.

However, the Trust Fund Act does not expressly provide a cause of action under these facts. "[D]espite the absence of an express provision for a private right of action, a breach of a statutory duty normally gives rise to a private right of action on behalf of the injured person (or group of persons) for whose benefit the statute was enacted." *Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 871 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985)); *see Dann v. Studebaker–Packard Corp.*, 288 F.2d 201, 209 (6th Cir. 1961) (applying Michigan law). "The Act unambiguously includes property owners as persons entitled to protection from a contractor's misapplication of trust funds in connection with a residential construction contract." *WeKnow Techs., Inc. v. Hayes*, No. 05-17-00554-CV, 2018 WL 3359085, at *4 (Tex. App.—Dallas July 10, 2018, no pet.) (mem. op.). However, the remedies associated with violations of the Trust Fund Act appear to focus on alleged misappropriation; while Appellants introduced evidence tending to prove Equinox did not have a trust account, they failed to introduce evidence tending to prove misappropriation in connection with their Trust Fund Act claim. Further, Appellants point to no remedy associated with failures to create a trust fund, particularly where there is no provable independent harm that results from such a failure. *Cf.* Tex. Prop. Code Ann. § 162.031(d) ("A trustee who commingles trust funds with other funds in the trustee's possession does not defeat a trust created by this chapter."). Therefore, we conclude the trial court did not err when it rendered partial summary judgment as to Appellants' Trust Fund Act claim.

## B. Breach of Fiduciary Duty

To prevail on a breach of fiduciary duty claim, the plaintiff must establish that: (1) a fiduciary relationship existed between the plaintiff and the defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in an injury to the plaintiff or a benefit to the defendant. *O'Hern v. Mughrabi*, 579 S.W.3d 594, 604 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

In their no-evidence motion, Appellees argued that Appellants "have not provided any evidence of a fiduciary duty, nor of a breach that caused injury to [Appellants] or that conferred a benefit to either [Appellee]." In response, Appellants argued that they provided evidence that a "fiduciary relationship" existed between the parties and pointed to (1) the Texas Property Code provisions requiring Equinox to maintain a trust account, and (2) the parties' contract.

But Appellants did not point to any evidence or make any argument regarding Appellees' no-evidence challenge to the other elements of the breach of fiduciary duty cause of action. Specifically, Appellants did not point to any evidence showing how Appellees' alleged breach of their fiduciary duties resulted in an injury to the plaintiff or a benefit to the defendant. *See O'Hern*, 579 S.W.3d at 604. Because Appellants did not address or produce any evidence in support of this challenged element, the trial court's partial summary judgment on Appellants' breach of fiduciary duty claim may be sustained on no-evidence grounds. *See First United Pentecostal Church of Beaumont*, 514 S.W.3d at 220; *Burbage*, 447 S.W.3d at 259.

Therefore, this argument is sufficient to sustain the trial court's partial summary judgment on Appellants' breach of fiduciary duty claim.

## C.    Fraud

To prevail on a fraud claim, the plaintiff must show:

1.    the defendant made a material representation that was false;

2.    the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;

3.    the defendant intended to induce the plaintiff to act upon the representation; and

4.    the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).  To satisfy the fourth element, the plaintiff must show it actually relied on the defendant's representation and that such reliance was justifiable.  *Id*. (citing *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010)).

In their summary judgment motion, Appellees asserted that Appellants could not provide any evidence "to show that either defendant made a false representation" (element one) or that "either defendant did so when it was knowingly false or recklessly without any knowledge of the truth and as a positive assertion" (element two).  Responding to this contention, Appellants produced the following excerpts from Lafreniere's deposition:

Q.    And there's been some discussion in this case that Mr. Le Brun represented that he was an architect.  Did he, when you first met him, tell you that he was an architect at that time?

A.    I recall that he did, yes.

                    *                    *                    *

Q.    When is the first time you heard that [Le Brun] was an architect?

13

A.  It would have been when I met him in the months or year before Hurricane Ike.

Q.  Did Mr. Le Brun tell you he was an architect when you began discussing repairs to your home specifically?

A.  He referred to himself as an architect many times as just a normal course of his interactions.

*          *          *

Q.  Are you saying that he referred to himself as an architect throughout the course of the project from right after Hurricane Ike up until the end of 2014?

A.  Correct.

Appellants also produced the following excerpts from Le Brun's deposition:

Q.  Are you a member of the French National Architects Order Board?

A.  No, sir.

Q.  Have you ever sat for the architect registration examination?

A.  No, sir.

Q.  Are you a registered architect in any jurisdiction?

A.  No, sir.

Q.  Are you a member of the American Institute of Architects?

A.  No, sir.

*          *          *

Q.  . . . Are you aware that it's illegal to call yourself an architect if, in fact, you are not an architect?

A.  Yes, sir.

Relying on this testimony, Appellants argued they met their summary judgment burden and produced more than a scintilla of evidence showing Le Brun (1) made a representation that was false (*i.e.*, that he was an architect), and (2) knew the representation was false or made recklessly as a positive assertion without any knowledge of its truth. We agree and conclude Appellants raised an issue of fact

14

with respect to these challenged elements of their fraud claim. The trial court erred when it granted Appellees' no-evidence motion for partial summary judgment concerning Appellants' fraud claim. While our concurring and dissenting colleague concludes that the trial court's error was harmless because the jury "necessarily found that appellees did not obtain a benefit by fraud or by taking of an undue advantage" (*see* Concurring & Dissenting Op. at 3), we disagree with respect to Le Brun's alleged misrepresentation because the jury never heard that he was not an architect based on Appellees' motion in limine at trial.

### III. Traditional Summary Judgment Motion

Finally, we examine Appellees' traditional summary judgment arguments with respect to Appellants' fraud claim.

To prevail on a traditional motion for summary judgment, the movant must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). If the movant establishes its entitlement to judgment, the burden shifts to the nonmovant to disprove or raise a genuine issue of material fact sufficient to defeat summary judgment. *Cty. Inv., LP v. Royal West Inv., LLC*, 513 S.W.3d 575, 578 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). As with a no-evidence summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *In re Estate of Howard*, 543 S.W.3d 397, 400 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

#### A. Statute of Limitations

We begin with Appellees' contention that Appellants' tort claims are barred by limitations, an argument raised in Appellees' "Supplemental Motion for Summary Judgment". Appellees based this argument solely on Le Brun's first

representation to Lafreniere that he was an architect — which occurred "as far back as 2008". Pointing out that Appellants did not file their suit until June 2015, Appellees assert the claims are outside the applicable statutes of limitation.

In response, Appellants argued (in relevant part) that the limitations period for Appellants' fraud claim did not begin to run until the fraud was discovered or could have been discovered through the exercise of reasonable diligence and that the discovery rule tolled the applicable limitations period.[2]

Appellants' fraud claim is subject to a four-year limitations period. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 203 (Tex. 2011). The limitations period begins to run when the claim accrues; generally, "a claim accrues when facts come into existence that authorize a claimant to seek a judicial remedy, when a wrongful act causes some legal injury, or whenever one person may sue another." *LaTouche v. Perry Homes, LLC*, 606 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, no pet. h.).

A cause of action for fraud accrues on the date the fraud is perpetrated, *i.e.*, when the defendant makes the allegedly false representation. *Exxon Corp.*, 348 S.W.3d at 216; *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 226 (Tex. App.—Houston [14th Dist.] 2008, no pet.). But if the fraud is concealed, "[t]he statute of limitations for fraud begins to run from the time the party knew of the misrepresentation." *Exxon Corp.*, 348 S.W.3d at 216; *see also Jones v. Markel*, No. 14-14-00216-CV, 2015 WL 3878261, at *5 (Tex. App.—Houston [14th Dist.] June 23, 2015, pet. denied) (mem. op.).

A defendant moving for summary judgment on the affirmative defense of

---

[2] The doctrine of fraudulent concealment and the discovery rule are affirmative defenses that must be raised in the nonmovant's pleading or in response to the summary judgment motion. *See KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749-50 (Tex. 1999); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517-18 (Tex. 1988).

limitations bears the burden of conclusively establishing the elements of that defense. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018) (per curiam). This burden includes conclusively establishing when the claim accrued. *Id*. at 833-34.

Here, Appellees did not satisfy their summary judgment burden and did not conclusively establish the elements of the affirmative defense of limitations. Appellants' fraud claim was based on Le Brun's alleged misrepresentation that he was an architect. As we discussed above, the limitations period for this claim began to run when Appellants knew this statement constituted a misrepresentation. *See Exxon Corp.*, 348 S.W.3d at 216.

Responding to Appellees' limitations argument, Appellants asserted they "did not discover Le Brun was not an architect until much later." Appellants pointed to testimony from Lafreniere's deposition, in which she stated that she "first bec[a]me aware that Mr. Le Brun was not an architect" "around September of 2014." Lafreniere agreed that, "for [the] entire four-year period prior to September, 2014, [she] was under the impression that Mr. Le Brun was an architect." Appellants also produced evidence of several media publications that referred to Le Brun as an architect. This evidence, Appellants argued, "shows [Appellants] would not have discovered Le Brun was not an architect even with reasonable diligence until when they finally did in 2014."

Appellees did not respond to this argument in their summary judgment reply and did not produce any evidence showing that Appellants knew (or should have known) at an earlier date that Le Brun misrepresented his status as an architect. Therefore, Appellees did not conclusively prove Appellants knew of the alleged misrepresentation more than four years before they filed suit in June 2015.

With respect to Appellants' fraud claim, Appellees did not establish their

17

entitlement to judgment as a matter of law on the affirmative defense of limitations.

### B.    Economic Loss Rule

Arguing that the economic loss rule barred Appellants' tort claims, Appellees asserted in their summary judgment motion that "all of the damages [Appellants] have claimed . . . flow from the breach of [the parties'] contract." Appellees supported this argument by referencing Appellants' response to an interrogatory inquiring about Appellants' claimed damages. Specifically, Appellants' response identified the following damage elements: construction cost overruns; repair of construction defects; delay damages; loss of use damages; depreciation of home; reduction/diminution in market value of home; expert fees; exemplary damages; interest; court costs; and attorney's fees.

"The economic loss rule was initially formulated to set perimeters in product liability cases." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) (citing Eddward P. Ballinger, Jr. & Samuel A. Thumma, *The History, Evolution and Implications of Arizona's Economic Loss Rule*, 34 Ariz. St. L.J. 491, 492 (2002)). "[T]he economic loss rule precludes recovery of economic losses in *negligence* when the loss is the subject matter of a contract between the parties." *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 285 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (emphasis added) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *Essex Ins. Co. v. Blount, Inc.*, 72 F. Supp. 2d 722, 724 (E.D. Tex. 1999); and *Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 687 (N.D. Tex. 1998)); *see also LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014) (economic loss rule only applies to unintentional torts). "[T]he 'economic loss' rule has never been a

general rule of *tort* law; it is a rule in *negligence* and *strict product liability*." *Sharyland Water Supply Corp.*, 354 S.W.3d at 418 (quoting William Powers, Jr. & Margaret Niver, *Negligence, Breach of Contract, and the "Economic Loss" Rule*, 23 Tex. Tech L. Rev. 477, 487 (1992) (emphases added by the *Sharyland* court)). *Cf. Sharyland Water Supply Corp.*, 354 S.W.3d at 417 ("We . . . declined to extend *DeLanney* to a fraudulent inducement claim, even when the claimant suffered only economic losses to the subject of a contract.") (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998)); *Sharyland Water Supply Corp.*, 354 S.W.3d at 418 (". . . [p]ure economic loss is commonly recoverable in certain torts") (quoting Powers & Niver, *supra* at 492).

In general, "the rule precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718-19 (Tex. 2014) (per curiam). But the economic loss rule does not bar all claims arising out of a contractual setting, and a party cannot "avoid tort liability to the world simply by entering into a contract". *Id.* Specifically, a claim is not barred by the economic loss rule when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit. *Id.*; *see also Hilburn v. Storage Trust Props., LP*, 586 S.W.3d 501, 507-08 (Tex. App.— Houston [14th Dist.] 2019, no pet.).

Here, the economic loss rule does not bar Appellants' fraud claim. As evidenced by the allegations in Appellants' third amended petition, this claim was premised on duties separate from those imposed by the parties' contract. In relevant part, the parties' contract provided as follows with respect to Appellees' duties:

The Contractor[3] accepts the relationship of trust and confidence established between his company and [Lafreniere] by this agreement. He covenants with [Lafreniere] to furnish his best skill and judgment in furthering the interest of [Lafreniere]. He agrees to furnish efficient business administration and supervision and to use his best efforts to furnish at all times an adequate supply of workers and materials, and to perform the work in a most expeditious, economical and workmanlike manner.

Job concept to include demolition and renovation plus additional new structure.

The contract is signed by Le Brun as Equinox's president.

Appellants' fraud claim stems from misrepresentations Le Brun allegedly made before the parties entered into their contract — misrepresentations that, according to Lafreniere's deposition, constituted "an important factor in [her] decision to hire Equinox". *See Formosa Plastics Corp. USA*, 960 S.W.2d at 46 ("it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself"); *Reservoir Sys., Inc. v. TGS-NOPEC Geophysical Co.*, 335 S.W.3d 297, 308 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("Tort damages are recoverable for a fraudulent-inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract.").

Moreover, Appellants' claim for fraud is not an unintentional tort. *See United Residential Props., L.P. v. Theis*, 378 S.W.3d 552, 564 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (describing fraud as an "intentional tort"). Therefore, the economic loss rule does not apply. *Sharyland Water Supply Corp.*, 354 S.W.3d at 418; *Coastal Conduit & Ditching, Inc.*, 29 S.W.3d at 285; *see also Barzoukas v. Found. Design, Ltd.*, 363 S.W.3d 829, 834 (Tex. App.—Houston

---

[3] The parties' contract defines the "Contractor" as Equinox.

[14th Dist.] 2012, pet. denied).

Appellees did not establish their entitlement to judgment as a matter of law with respect to their economic loss rule argument.

### C.    One Satisfaction Rule

"The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991); *see also Alief Indep. Sch. Dist. v. Perry*, 440 S.W.3d 228, 244 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Under this rule, a plaintiff is entitled to one recovery for damages suffered when multiple defendants commit the same act as well as when multiple defendants commit technically different acts resulting in a single injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000); *Alief Indep. Sch. Dist.*, 440 S.W.3d at 244.

In their summary judgment motion, Appellees' one satisfaction rule argument rested on what they termed Appellants' "Allstate case". There, Appellants sought recovery from the Allstate insurance company for damages to their home after Hurricane Ike. Appellees argued that the funds Appellants obtained in the "Allstate case" "to build their new house" (when considered in conjunction with the recovery Appellants sought in the underlying proceeding) "constitute[d] a double recovery".

But Appellees did not include any evidence with their summary judgment motion to substantiate the "Allstate case" or show: (1) Appellants' theories of recovery in that case; (2) whether the case proceeded to trial or was settled; or (3) the damages Appellants received. Without this information, Appellees could not meet their summary judgment burden. Additionally, the record reveals that Appellants' injuries include cost overruns and loss of use and that Appellees did

21

not counter these damages until their motions in limine and for directed verdict (neither of which involved Appellants' tort claims). Finally, Appellees did not present for review the one satisfaction rule in their briefing on appeal. *See* Tex. R. App. P. 38.1(f), 38.2(a)(1).

Appellees failed to prove as a matter of law that the one satisfaction rule barred Appellants' tort claims.

In conclusion, Appellees did not meet their summary judgment burden with respect to their statute of limitations, economic loss rule, and one satisfaction rule arguments. The trial court's summary judgment on Appellants' fraud claim cannot be affirmed on these grounds.

## CONCLUSION

Any error with respect to the trial court's summary judgment on Appellants' negligence, breach of warranty, and DTPA claims is harmless in light of the jury's responses to the questions submitted in the charge. The trial court's judgment on these claims is affirmed.

The trial court's judgment on Appellants' Trust Fund Act and breach of fiduciary duty claims is affirmed on no-evidence grounds.

The trial court's summary judgment on Appellants' fraud claim cannot be affirmed on either the no-evidence or traditional grounds asserted in Appellees' summary judgment motion and the supplement thereto. Therefore, we reverse in part the trial court's judgment granting in part Appellees' summary judgment motion with respect to Appellants' fraud claim. We remand the case to the trial court for further proceedings limited to Appellants' fraud claims.

/s/    Meagan Hassan
Justice


Panel consists of Justices Zimmerer, Spain, and Hassan (Zimmerer, J., concurring and dissenting).