In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00125-CV
_____

IN THE MATTER OF THE MARRIAGE OF
SARA ALYSSA CRUEY AND JOSHUA WAYNE CRUEY

_____

On Appeal from the 247th District Court
Harris County, Texas
Trial Cause No. 2019-53047

_____

**MEMORANDUM OPINION**

This is an appeal from a final decree of divorce.[1] In four appellate issues, Joshua Cruey ("Joshua" or "Appellant") contends the trial court abused its discretion in granting Sara Cruey ("Sara" or "Appellee") a late amendment to her pleadings, in characterizing his entire pension as community property, in making a disproportionate division and forced sale of the marital residence, and in making its division of property. We affirm.

---

[1] This case was transferred to our Court from the Fourteenth Court of Appeals in Houston, Texas under an order issued by the Supreme Court of Texas. *See* Tex. Gov't Code Ann. § 73.001.

1

## Background

Sara and Joshua were married in April 2015, and they separated in August 2019.[2] Sara filed an Original Petition for Divorce and she later filed several amended petitions. In her Third Amended Petition—filed on September 10, 2020—Sara requested that the marital home at 18210 South Austin Shores Drive ("the Austin Shores home") be sold and the proceeds be divided in a just and right manner. She also asserted a Reimbursement Claim, asking the court to reimburse her "separate estate for funds paid on behalf of [Joshua's] separate estate including but not limited to the payoff of [Joshua's] vehicle."

On September 11, 2020, Joshua filed a counterpetition, asserting claims for reimbursement. Joshua requested the court (1) to reimburse the community estate for funds or assets it expended for the benefit of Sara's separate estate, (2) to reimburse Joshua's separate estate for funds or assets it expended for the benefit of Sara's separate estate, (3) to reimburse the community estate for funds or assets it expended to make capital improvements on property Sara claimed as her separate property, (4) to reimburse Joshua's separate estate for funds or assets it expended to make capital improvements on property Sara claimed as separate property, (5) to

---

[2] Sara and Joshua had one child together. Issues relating to the child were resolved at mediation before trial and were merged into the Final Decree of Divorce. The issues at trial and on appeal do not relate to child custody issues but only to the division of property, Sara's amended petitions, and Joshua's motion for new trial.

2

reimburse the community estate for funds or assets it expended for the payment of a debt owed by Sara that was secured by property Sara claimed as separate property, and (6) to reimburse Joshua's separate estate for funds or assets it expended for the payment of a debt owed by Sara that was secured by property Sara claimed as separate property.[3]

A bench trial on the division of property was held March 18, 2021. After the trial but before the trial court made its ruling, Sara filed a motion for leave to file her Fourth Amended Petition, along with her Fourth Amended Petition, in which she asserted a Reimbursement Claim, alleging that the property located at 18326 Water Mill Drive ("the Water Mill home") was her separate property, that the $52,091.43 received from the sale of the Water Mill home was her separate property, and that $52,091.43 was paid towards the down payment of the Austin Shores marital home. Sara alleged that the community estate benefited by her separate estate funds and she should be reimbursed $52,091.43 by the community estate. Sara also asked the court to grant an equitable lien in the amount of $52,091.43 in her favor and against the community estate based on her claim for reimbursement.

---

[3] The counterpetition did not identify specific properties, assets, or debts.

## Evidence at Trial

<u>Sara's Testimony</u>

Sara testified that she bought her home on Water Mill in 2012, that she lived at Water Mill before she married Joshua, and that she and Joshua lived at the Water Mill home for a while after they married until they bought the Austin Shores home together. She recalled that she sold the Water Mill home on November 9, 2017, the same day she and Joshua bought the Austin Shores home. According to Sara, all the proceeds from the sale of the Water Mill home were used as a down payment on the Austin Shores home. Exhibit 5 was admitted into evidence, which Sara identified as the closing documents for both homes. Sara testified that $52,091.43 in cash proceeds from the sale of the Water Mill home were transferred as a credit for the purchase of the Austin Shores home, and the Austin Shores home cost $353,000. The closing papers for the sale of the Water Mill home listed the seller as "Sara A. Cruey f/k/a Sara A. Richardson[.]" Sara agreed that she was asking the court for a reimbursement for $52,091.43.

Sara understood that the Harris County Appraisal District valued the Austin Shores home at about $383,899, and she believed the remaining balance on the mortgage was about $305,000. Sara agreed she was asking for the Austin Shores home to be sold because "that's the only way [she] would get [her] separate property back."

Sara also testified that she was asking for Joshua's Houston Fire Department ("HFD") retirement to be fairly divided. Sara's Amended Suggested Division of Property reflected that she believed the HFD retirement was valued at about $45,201.51 and she suggested she and Joshua each receive $22,600.76. Petitioner's Exhibit 19 was admitted into evidence, which was Joshua's First Supplemental Answers and Objections to Petitioner's First Set of Written Interrogatories. The interrogatory responses reflect that Joshua valued his separate property portion of his HFD retirement fund at $14,961.00.

At the close of Sara's case in chief, Joshua requested a directed verdict on Sara's claim for reimbursement and request for an equitable lien because there was no clear and convincing evidence that the Water Mill home was Sara's separate property, there was improper tracing of funds, and Sara had not pleaded for an equitable lien. The court denied the motion.

On cross-examination, Sara testified that Zillow had made an offer to buy the Austin Shores house in November 2019, and Sara believed that, based on the terms of that offer, she and Joshua would have taken a loss on the sale of the house. Sara also agreed that Joshua was working for the HFD when they got married and that portions of his retirement account were accumulated before the marriage. She also testified that she would not oppose the court only dividing the portion of the HFD account accumulated during the marriage. Sara also testified that Joshua started

5

living at the Water Mill home in February 2014, he paid towards the mortgage and some of the home expenses while he lived there, and the mortgage balance reduced because they both had been paying on it for years. Sara testified that she had been unable to obtain a statement of the mortgage balance as of the date of the marriage. Sara agreed that upon closing on the sale of the Water Mill home, she did not receive a deposit of about $52,000 into a bank account and the proceeds "went into the Austin Shores house." She also testified that they used the proceeds from the sale of Water Mill as a down payment on Austin Shores, and she agreed that at the same time they sold the Water Mill home and bought the Austin Shores home, some of the funds were used to pay off Joshua's car note. According to Sara, the only improvements they made to the Water Mill home before selling it was to add some French doors and replace the carpet. On redirect, Sara agreed that her exhibits reflected amounts paid towards the mortgage on Water Mill—$3,662.59 in 2013, $4,060.19 in 2017, and $4,459.84 in 2018.

Joshua's Testimony

Joshua agreed that he had been living in the Austin Shores marital home since he and Sara separated in September 2019. He testified that he valued the Austin Shores home at $294,000 in his inventory based on an offer he and Sara had received for the home, and they did not take that offer because it would have cost them about $18,000, which he could not afford to pay. Joshua estimated that he had invested

6

about $15,000-20,000 in repairs and upkeep of the home. As to Sara's claim for reimbursement, Joshua agreed that he was asking the court to allow him to pay that out monthly or refinance the loan instead of selling the home. On cross-examination, Joshua testified that he and Sara bought the Austin Shores home for $353,000, but that in his opinion it was no longer worth that amount. Joshua also agreed the 2020 county property appraisal for the home valued it at $383,899.

Joshua agreed that he had worked as a firefighter before he and Sara married, that his separate portion of his HFD pension account was $14,961, and that the total value of the HFD account was $45,000. On cross-examination, when asked whether he had documentation that showed the value of his retirement account before the date of marriage, Joshua replied that he had provided the "documentation for [his] retirement statements." There was no further testimony about the documentation and no documents were entered into the record on this point at trial.

Joshua testified that he paid about $33,000 towards the mortgage, repairs, and improvements for the Water Mill home. Joshua agreed that the net proceeds from the sale of the Water Mill home were used to purchase the Austin Shores home. Joshua also agreed that his property inventory listed real estate in New Mexico, which he testified was given to him by his father. He asked the court to confirm the New Mexico property as his separate property.

Post-Trial Proceedings

The court held a hearing on Entry of Judgment on April 23, 2021, the trial court signed an Order Granting Trial Amendment on April 29, 2021 "to conform the pleadings to the evidence presented" on Sara's reimbursement claim and request for an equitable lien, and the Final Decree of Divorce was signed on April 30, 2021. The decree awarded each party fifty percent of Joshua's HFD retirement account. The decree orders the immediate sale of the Austin Shores marital home; it provides that Joshua will have exclusive use and possession of the marital home until closing; it states that Joshua will pay the mortgage and taxes on the marital home until closing; and further that upon closing the sale of the marital home, the first $29,599.80 of the proceeds (after payment of costs and debts) be paid to Sara, and any remaining proceeds be split sixty percent to Sara and forty percent to Joshua.[4]

Joshua filed a request for findings of fact and conclusions of law addressing the "characterization and value of all assets, liabilities, claims, and offsets[,]" but

---

[4] The decree also awards the following to Joshua as his separate property: real property in New Mexico; a 2014 Polaris RZR 1000; household furniture, furnishings, and personal effects in his possession; cash and bank accounts in his possession and under his sole control; and a 2013 Subaru Outback, a 2020 Dodge Ram, and a 2008 Yamaha WR250x motorcycle. The decree ordered as Sara's separate property: household furniture, furnishings, and personal effects in her possession, cash and bank accounts in her possession and under her sole control; and a 2012 Audi Q5. The decree orders that Sara pay the debt on two credit cards and Joshua pay the debt on a loan for the Dodge Ram and another credit card. We do not address the details of these items in further detail as they do not pertain to the issues raised on appeal.

none were entered, and the record does not include a Rule 297 Notice of Past Due Findings of Fact and Conclusions of Law.

Joshua filed a Motion for New Trial, challenging the legal and factual sufficiency to support the court's judgment about the characterization of property, the division of the marital estate, the ordered sale of the marital residence, and the reimbursement claims. The motion also argued that the trial court erred in awarding Sara a portion of Joshua's separate property interest in his HFD retirement account. According to the motion, the trial court should grant a new trial based on newly discovered evidence, namely a "[l]etter from Houston Fire Department confirming [Joshua's] separate property interest in his retirement plan and outstanding Homeowner's Association Dues." The motion also argued that the trial court erred in awarding Sara a disproportionate division of the marital estate and in ordering the sale of the marital residence because there was no or insufficient evidence to support the judgment.

At the hearing on the motion, Joshua's attorney argued that he had only been able to get "limited documents" from HFD stating the value of his separate property interest and the attorney stated that newly discovered evidence—a letter from HFD—was available to show that the value of the HFD pension at the date of Joshua and Sara's marriage was about $14,000. Sara's counsel objected to the document as

9

hearsay, and the trial court sustained the objection. The trial court denied the motion

for new trial.

Issues

Appellant states four issues on appeal:

1. The trial court abused its discretion when it awarded Appellee half of Joshua Cruey's total pension plan as community property despite sufficient evidence that a significant portion was his separate property.

2. The trial court abused its discretion in allowing Appellee's late amendment to her pleadings because it asserted a new substantive matter that detrimentally affected Joshua Cruey's case.

3. The court erred in its distribution of the marital residence because it fails to properly value the property and ignores Joshua Cruey's financial contributions before, during, and after the marriage.

4. The evidence is legally and factually insufficient to support the court's entire property division considering its improper distribution of the marital residence and Joshua Cruey's pension plan.

Characterization of Property

Under both the Texas Constitution and the Texas Family Code, a spouse's

separate property consists of (1) the property the spouse owned or claimed before

marriage, and (2) the property the spouse acquired during marriage by gift, devise,

or descent. Tex. Const. art. XVI, § 15; Tex. Fam. Code Ann. § 3.001; *Villalpando v.*

*Villalpando*, 480 S.W.3d 801, 806 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Community property, by contrast, consists of all property, other than separate

10

property, acquired by either spouse during the marriage. Tex. Fam. Code Ann. § 3.002; *Villalpando*, 480 S.W.3d at 806.

We begin with the presumption that all property possessed by either spouse during or on dissolution of marriage is community property. Tex. Fam. Code Ann. § 3.003; *Villalpando*, 480 S.W.3d at 806. The burden of overcoming this presumption rests on the party asserting that the property is his separate property, and that party must establish the separate character of the property by clear and convincing evidence. *Barras v. Barras*, 396 S.W.3d 154, 163 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). "Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Villalpando*, 480 S.W.3d at 806. This evidence generally must trace and clearly identify the property as separate. *Zamarripa v. Zamarripa*, No. 14-08-00083-CV, 2009 Tex. App. LEXIS 5122, at *7 (Tex. App.—Houston [14th Dist.] June 30, 2009, pet. denied) (mem. op.). "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Graves v. Tomlinson*, 329 S.W.3d 128, 139 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Generally, the clear and convincing standard is not satisfied by testimony that property possessed at the time the marriage is dissolved is separate property when such testimony is either

11

contradicted or unsupported by documentary evidence tracing the asserted separate nature of the property. *Barras*, 396 S.W.3d at 164.

We review a trial court's division of community property for an abuse of discretion. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or whether it acted without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). The law requires an equitable, not an equal, division of the community estate. *See* Tex. Fam. Code Ann. § 7.001; *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 546 (Tex. 2018) (Devine, J., concurring); *In re Marriage of Harrison*, 557 S.W.3d 99, 140 (Tex. App.— Houston [14th Dist.] 2018, pet. denied). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the division. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

We employ a two-part test when reviewing alleged characterization errors. *See Harrison*, 557 S.W.3d at 140. Under this test, Joshua must show both a characterization error and harm—i.e., a division or an order that is manifestly unjust and unfair. *See id.* We need not reverse a trial court's division of property when the party claiming a mischaracterization fails to show how the erroneous characterization of community property as separate property caused the trial court to abuse its discretion in dividing the marital estate. *See id.* at 140-41; *Lynch v. Lynch*,

540 S.W.3d 107, 133 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *In re Marriage of McNelly*, No. 14-13-00281-CV, 2014 Tex. App. LEXIS 5193, at *20 (Tex. App.—Houston [14th Dist.] May 15, 2014, pet. denied) (mem. op.) ("Mischaracterization of community property as separate property is harmful and requires reversal only if the mischaracterization affects the just and right division of the community estate.").

In a bench trial, the judge is the factfinder and the sole judge of the credibility of the witnesses and weight to be given their testimony. *See Murff*, 615 S.W.2d at 700; *Zagorski v. Zagorski*, 116 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). To determine whether the trial court divided the community estate in a "just and right" manner, we must have the trial court's findings on the value of those assets. *Harrison*, 557 S.W.3d at 141. Without findings of fact, we do not know the basis for the division, the values assigned to the community assets, or the percentage of the marital estate that each party received. *See id.* When no findings of fact are filed, we imply all findings necessary to support the court's judgment. *See id.* at 131 (citing *In re P.A.C.*, 498 S.W.3d 210, 217 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)); *In re Marriage of McCoy & Els*, 488 S.W.3d 430, 433-34 (Tex. App.—Houston [14th Dist.] 2016, no pet.). We review the record in the light most favorable to the trial court's judgment to determine

whether some evidence supports it, and we will uphold the judgment on any legal theory that finds support in the evidence. *Harrison*, 557 S.W.3d at 131.

HFD Pension Benefits

In his first issue, Joshua argues that the trial court abused its discretion in awarding Sara half of Joshua's total pension benefits "because both parties agreed that at least $14,000 of the total amount was Joshua's separate property." Joshua also argued that he proved by clear and convincing evidence that at least $14,000 of his HFD pension was his separate property because he testified that amount was his separate property, and his testimony was not contradicted by Sara's testimony.

In support of his argument that his uncontradicted testimony was clear and convincing evidence of his separate property portion of the HFD pension, Joshua cites to *Kelly v. Kelly*, 634 S.W.3d 355 (Tex. App.—Houston [1st Dist.] 2021, no pet.). In *Kelly*, the Houston First Court explained that a witness's testimony may be taken as true if it is "'clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon[.]'" *Id.* at 351 (quoting *Monroe v. Monroe*, 358 S.W.3d 711, 718 (Tex. App.—San Antonio 2011, pet. denied). Still, the Court cautioned that a party's unsupported testimony may not be sufficient to meet the clear and convincing standard. *See id.* In *Kelly*, however, not only did the husband testify to the value of his retirement account at the time of marriage, but he also produced an expert witness (a CPA) who traced the values in

14

the retirement account and who had reviewed documents showing the account balance on the date of marriage, contributions to the account, fund transfers, dividends, and an ending balance. *See id*. at 349-51. The *Kelly* Court determined that the husband had produced clear and convincing evidence of his separate property interest in the retirement account, specifically, the value of the account at the time of marriage. *See id.* at 352.

Here, unlike *Kelly*, Joshua did not produce evidence of tracing, account activity, or an expert witness. At the April 23, 2021 hearing on Entry of Judgment, the trial court stated:

> . . . The reason I didn't confirm the 14,000, and correct me if I'm wrong but my memory of it was that the only testimony was that he said that he had some portion of it before, but there was no tracing. He never testified that he had never taken any money out of it and so I don't think -- I don't think he gave me enough to rebut the presumption of community property on that.
>
> So like the only testimony as far as I remember was that there was money in there before and that there's money in there now, but there was no, like -- nothing in between then and now. That was my concern about that.
>
> So I don't think he rebutted the presumption about that; and she did testify like, yeah, he had something before then, but she didn't know how much it would be, and I don't think that the fact that that was the balance on the date of marriage is enough to establish that that is a separate property portion.

As we have explained, to overcome the presumption of the property being community property, tracing is necessary to establish the separate origin of the property. *See Zamarripa*, 2009 Tex. App. LEXIS 5122, at *7; *Barras*, 396 S.W.3d

15

at 163-64; *Graves*, 329 S.W.3d at 139. The trial court as factfinder and sole judge of the credibility and weight of the evidence could have determined that Joshua failed to present clear and convincing evidence of his separate property interest due to the lack of tracing. *See Murff*, 615 S.W.2d at 700; *Barras*, 396 S.W.3d at 163-64; *Zagorski*, 116 S.W.3d at 318.

Joshua also argues that the trial court erred in denying his motion for new trial because he raised material new evidence in support of his property claim. "We review a trial court's refusal to grant a motion for new trial for abuse of discretion." *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). To determine whether the trial court abused its discretion, we must decide ultimately whether the trial court acted without reference to any guiding rules or principles. *See Downer*, 701 S.W.2d at 241-42. A party seeking a new trial on grounds of newly discovered evidence must demonstrate to the trial court that (1) the evidence came to his knowledge since the trial, (2) his failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Each element must be established by an affidavit of the party. *See In re Thoma*, 873 S.W.2d 477, 512 (Tex. Rev. Trib. 1994, no appeal); *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 844 (Tex. App.—Dallas 2008, no pet.).

16

At the hearing on the motion for new trial, Joshua's counsel stated that Joshua "was unable to get the documents -- He was able to get limited documents from the fire department, specifically stating the value of his separate property interest from the community property interest." Counsel offered two exhibits, including one exhibit purportedly documenting the value of Joshua's HFD pension account at the time of trial of about $31,000 and another showing the value of the account at the time of the marriage:

> . . . Exhibit 1 would have been the letter that he was unable to obtain, but did eventually obtain that after the trial was completed, showing the value that had accumulated between his date of hire of November 12th, 2011, to April 4th, 2015, around their date of marriage, in the amount of about 14,000. And that is the evidence that he was unable to retrieve. And the letter is dated after our trial date. That's actually when he did receive it.
> . . .
> If the Court were to consider the new evidence, it would reduce the community property portion of the retirement almost by half. And so that would definitely then affect the rest of the division of assets and debts.

Sara's counsel objected to the exhibits offered as new evidence based on hearsay, and the trial court sustained the objection. The exhibits were not made part of the record for appellate purposes.

A trial court does not abuse its discretion in denying a motion for new trial based on newly discovered evidence when the evidence is inadmissible. *See Lynd v. Wesley*, 705 S.W.2d 759, 762 (Tex. App.—Houston [14th Dist.] 1986, no writ) (no abuse of discretion to deny motion for new trial where movant failed to introduce

17

admissible competent evidence at the hearing of the existence of any newly discovered evidence); *see also Amigos Meat Distribs., L.P. v. Guzman*, 526 S.W.3d 511, 522 n.2 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (movant must offer admissible relevant evidence demonstrating the existence of newly discovered evidence). Nor does a trial court abuse its discretion in denying a motion for new trial where the movant does not show its due diligence in trying to procure the evidence prior to trial. *See Lynd*, 705 S.W.2d at 762. Here, the evidence Joshua offered at the hearing consisted of a letter he had received, and the trial court ruled the letter was not admissible. Nothing in the record establishes that Joshua exercised due diligence in attempting to procure the letter prior to trial and the trial court could have concluded that Joshua failed to meet his burden to show due diligence. We also note that Joshua's motion for new trial and argument at the hearing on the motion lack any evidence or argument that the letter would have provided any evidence of tracing to overcome the presumption of community property. So, we conclude that the trial court did not abuse its discretion in denying Joshua's motion for new trial. Finding no abuse of discretion by the trial court and no mischaracterization of the retirement account, we need not examine whether any harm resulted. *See* Tex. R. App. P. 47.1; *Harrison*, 557 S.W.3d at 140-41; *Lynch*, 540 S.W.3d at 133. We overrule Appellant's first issue.

Amended Pleadings

In his second issue, Joshua argues that the trial court abused its discretion in allowing Sara's late amendment to her pleadings. He objects to her claim for reimbursement which she initially made in her Third Amended Petition and also to her requests for reimbursement and an equitable lien made in her Fourth Amended Petition. According to Joshua, Sara's late-filed pleading amendments were facially prejudicial because they "reshaped the proceedings."

Rule 63 of the Texas Rules of Civil Procedure provides that amended pleadings may be filed within seven days before trial only with leave of court. *See* Tex. R. Civ. P. 63. Sara's Third Amended Petition was filed on September 10, 2020—about six months before the March 2021 bench trial—and well before the seven-day window prescribed by Rule 63. For that reason, we only consider Joshua's challenge about Sara's Fourth Amended Petition that was filed after the bench trial.

Amendments to the pleadings during trial are governed by Rule 66 and Rule 67 of the Texas Rules of Civil Procedure. Rule 66 is entitled "Trial Amendment" and it provides that the court may allow amendments to a pleading and shall do so when the amendment would serve the presentation of the merits without prejudicing the opposing party's action or defense on the merits. Under Rule 66, a trial court has no discretion to refuse a trial amendment unless: (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment is prejudicial on its face

because it asserts a new cause of action or defense, and the opposing party objects to the amendment. *Zarate v. Rodriguez*, 542 S.W.3d 26, 37 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 64 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Trial amendments that are procedural in nature, such as conforming the pleadings to the evidence introduced during trial, should be allowed. *Id.* Substantive amendments or those that change the nature of the trial are discretionary, and the court's decision to allow or deny them may be reversed only if the court clearly abused its discretion. *Id.*

A proposed trial amendment asserting a new cause of action may be prejudicial on its face, but it is not prejudicial as a matter of law. *Id.*; *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). We evaluate the amendment in the context of the entire case to determine prejudice. *Zarate*, 542 S.W.3d at 37. A trial amendment is prejudicial on its face if (1) the amendment asserts a new substantive matter that reshapes the nature of the trial itself; (2) the new matter is of such a nature that the opposing party could not have anticipated it in light of the development of the case up to the time the amendment was requested; and (3) the opposing party's presentation of its case would be detrimentally affected by the amendment. *Id.*

A claim for reimbursement may exist when funds or assets of one marital estate are expended to enhance or benefit another marital estate without receiving an offsetting benefit in return. *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982). Reimbursement is an equitable tool within the court's discretion, but it must be specifically pleaded. *See id.* at 458-59; *Harris v. Harris*, 765 S.W.2d 798, 805 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

Sara first asserted a claim for reimbursement in her Third Amended Petition, filed on September 10, 2020. A day later, Joshua filed an Original Counterpetition for Divorce, also asserting claims for reimbursement. At trial, Joshua's counsel told the court that "[t]he main issue is competing reimbursement claims[.]" Also at trial, Sara's counsel requested a trial amendment if necessary to correct any defect in the pleadings on the reimbursement claim and request for an equitable lien.

The trial court granted Sara a trial amendment, finding it "necessary to conform [] the pleadings to the evidence presented regarding [Sara's] reimbursement claim/request for equitable lien." The trial court also found that there was "no cause to believe that this trial amendment would cause surprise or prejudice to [Joshua]." Before Sara filed her Fourth Amended Petition, her Third Amended Petition raised a claim for reimbursement and Joshua's Counterpetition for Divorce raised claims for reimbursement. Sara's Third Amended Petition and Joshua's Counterpetition were filed in September 2020, about six months before trial and before Sara's Fourth

Amended Petition was filed. In the context of the entire case, we cannot say that the trial court abused its discretion in allowing Sara's trial amendment because both parties had raised claims for reimbursement six months before trial. *See Zarate*, 542 S.W.3d at 37. Joshua's counsel told the trial court at trial that "[t]he main issue is competing reimbursement claims[,]" from which the trial court could have concluded there was no surprise or prejudice in granting the trial amendment. *See id.* Similarly, the trial court could have concluded that the amendment as outlined in the Fourth Amended Petition was necessary to conform to issues about reimbursement that were tried by consent. *See* Tex. R. Civ. P. 67. Although Sara's Fourth Amended Petition asserted a claim for an equitable lien, the final divorce decree did not establish an equitable lien, and the trial court stated at the hearing on Entry of Judgment that "it wasn't really my intent that [there] be a lien; it was just sort of my intent that [Sara's reimbursement] come out of the proceeds of the sale[]" of the marital home. So, we find no abuse of discretion by the trial court in granting the amendment, and we overrule Appellant's second issue. *See id.*; *Zarate*, 542 S.W.3d at 37-39.

Sale of the Marital Home

In his third issue, Joshua argues that the trial court abused its discretion in ordering a forced sale of the marital home because there was no proper valuation of the property and because the sale and distribution was arbitrary and unreasonable.

According to Joshua, "'a trial court abuses its discretion in dividing the community estate without knowledge of its extent and proof of its value[,]'" quoting *Bradshaw*, 555 S.W.3d at 549 (Devine, J., concurring), and *Finn v. Finn*, 658 S.W.2d 735, 746 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). Joshua argues that Sara based her valuation of the Austin Shores home "solely on the Harris County Appraisal District's appraised value[,]" and he contends Sara's uncontested evidence, standing alone, is insufficient to prove the value of the Austin Shores home. Joshua also argues that at the hearing on Entry of Judgment, the court "assume[d] the house would sell for a profit based on its personal views of the housing market." Joshua argues in the alternative that, even if the trial court properly assigned a value to the Austin Shores marital home, the distribution the court made was erroneous because it failed to consider Joshua and the community's economic contributions and the financial effect of the sale. According to Joshua, the trial court assigned all the proceeds from the sale of the Water Mill home to Sara, despite Joshua having testified that he paid towards mortgage and other expenses on that home. Joshua argues that the trial court "ignore[d]" the community improvements and Joshua's mortgage payments since the date of separation and that he would suffer a major financial loss from the sale of the Austin Shores home. Finally, Joshua argues that the trial court's distribution was arbitrary because there was no reasonable basis for the division under the facts and circumstances of the case.

In a division of property upon a divorce, the trial court has broad power to order a just and right division of a divorcing couple's estate, including the power to order the sale of the couple's home and to partition the proceeds. *See Grant v. Clouser*, 287 S.W.3d 914, 919 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 131 (Tex. 1991)); *Delaney v. Delaney*, 562 S.W.2d 494, 495-96 (Tex. App.—Houston [14th Dist.] 1978, writ dism'd). At trial, Joshua's counsel acknowledged that the trial court had the power to order the sale of the marital property "at any point" to make a division of property.

Generally, under the "property owner rule" a property owner is qualified to testify to the market value of the real property he owns. *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155-59 (Tex. 2012) (citing *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)). But the property owner's testimony must still be based on something more than bare speculation. *Id*. at 156. For example, the landowner may rely upon evidence of the price paid, tax or appraised values, online resources, nearby sales, and "any other relevant factors may be offered to support the claim." *Id*. at 159. Here, Sara testified that in her inventory, she had stated that the Austin Shores home was valued at $383,000, and her inventory and appraisement and her suggested division of property reflected a value of $383,899. Sara also testified that she knew that Harris County had valued the property at $383,899, that

24

she believed "from other research" that the home would sell for at least that much, and that she had obtained an offer from Zillow, although she could not recall what Zillow offered. Joshua recalled that in response to interrogatories, he stated the value of the Austin Shores home was $294,000. Joshua's sworn inventory and his proposed property division, both admitted into evidence, listed a value for the Austin Shores home as $294,000. Petitioner's Exhibit 19—Joshua's First Supplemental Answers and Objections to Petitioner's First Set of Written Interrogatories—shows that Joshua stated a value of the Austin Shores home as $350,000, and Joshua testified at trial that he had given it a value of $350,000. Joshua agreed that the Harris County Appraisal District's 2020 statement for the Austin Shores home reflected a market value of the home of $383,899 in 2020 and $354,826 in 2019. Joshua also testified that he filed nothing with the county to protest the appraised value.

We do not find the quote Joshua relies on from *Bradshaw* ("'a trial court abuses its discretion in dividing the community estate without knowledge of its extent and proof of its value[,]'") to require a different result in this case. *Bradshaw* addressed whether a husband who had been convicted of continuous sexual abuse of his stepdaughter for conduct that occurred in the marital home should be awarded a portion of the marital home. *See Bradshaw*, 555 S.W.3d at 541-42. The Supreme Court dealt with unusual circumstances in *Bradshaw* "where the behavior [at issue] involves the use of community property, is as egregious as [the husband's], and

results in a criminal conviction." *Id.* at 545. So, factually our case is distinguishable from *Bradshaw*. As noted in the concurrence in *Bradshaw*, there the trial court lacked even a "a sketchy inventory" of assets in the record. *See id.* at 550. In our case, however, the parties provided multiple estimates of the value of the Austin Shores home and there was evidence in the record from the homeowners of a value that had been assigned to the property between $350,000 and $383,899, and evidence of the assessed value from the tax assessor.

It was within the trial court's purview as factfinder to consider the credibility and weight of the evidence and to resolve any conflicts in the evidence. *See Keller v. Wilson*, 168 S.W.3d 802, 819, 821 (Tex. 2005); *Murff*, 615 S.W.2d at 700. And when, as here, no findings of fact are filed, we imply all findings necessary to support the court's judgment. *See Harrison*, 557 S.W.3d at 131. So, we cannot say that there was no valuation of the Austin Shores home before the trial court.

At the hearing on Entry of Judgment, the trial court found that Joshua benefited from living in the Austin Shores home prior to its sale. The court acknowledged that Joshua would be responsible for mortgage payments pending sale of the home. The trial court also addressed the 60/40 split of the Austin Shores home:

> What it is is a reason for him not to frustrate the sale of the house because he really doesn't want to sell it and he's the one in control of it. So if he doesn't like that she's benefitting from his payments toward it, that's motivation for him to get it sold.

26

Although the court stated "[p]eople are getting 30 and $40,000 over asking right now on the market[,]" the record does not reflect that any personal assumption by the trial court judge was relevant in dividing the community property. Without findings of fact and conclusions of law, implying all findings necessary to support the court's judgment, and on this record, we lack a basis for finding that the trial court abused its discretion in ordering the sale of the marital home and dividing the proceeds from the sale. *See id.* at 131, 141.

Joshua argues that the divorce decree is "unclear as to the legal effect of the $29,000 lien." Nothing in the language of the Final Decree of Divorce creates a lien. At the hearing on Entry of Judgment, the trial court stated, "it wasn't really my intent that it be a lien; it was just sort of my intent that [$29,000 to Sara] come out of the proceeds of the sale." We reject Appellant's argument.

The division of property in a divorce action should be in a manner that the court deems "just and right[.]" *See* Tex. Fam. Code Ann. § 7.001. But it need not necessarily be equal to be "just and right." *Bradshaw*, 555 S.W.3d at 546 (Devine, J., concurring); *Harrison*, 557 S.W.3d at 140. A court may consider various factors in dividing the parties' community property, including any disparity of incomes or earning capacities of the parties. *See Murff*, 615 S.W.2d at 698-99. Joshua stated in responses to interrogatories that he earned income about $49,000 a year from the HFD and about $24,000 a year from working at his father's business. In his financial

27

statement, he reported monthly income from HFD of $3,605.07 and $3,000 per month "from other sources"—for a little more than $79,000 annually. By contrast, Sara reported that her income was limited to $45,000. That disparity in income, along with the other testimony about the contribution of the sales proceeds from the Water Mill home, for example, could have contributed to the division made by the trial court. Thus, we cannot say that the trial court abused its discretion in ordering the sale of the Austin Shores home and in dividing the sales proceeds. *See Murff*, 615 S.W.2d at 698-99. We overrule Appellant's third issue.

## Sufficiency of the Evidence

Joshua's final issue argues that the evidence is legally and factually insufficient to support the trial court's "entire property distribution." Joshua argues that "the evidence presented at trial fails to provide any justifiable basis for the court's disproportionate division of the marital residence." According to Joshua, the trial court lacked sufficient information on which to exercise its discretion and specifically that the trial court lacked a "correct" valuation of the Austin Shores home. Joshua argues that the trial court ignored his contributions to the Water Mill home, ignored evidence of Joshua's separate property interest in his HFD pension, and ignored the "catastrophic financial loss for Joshua" that would result from the forced sale of the Austin Shores home. In the alternative, Joshua argues that the trial

court abused its discretion in denying his motion for new trial based on the sufficiency of the evidence.

Because we review a trial court's division of property under an abuse of discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds for reversal, but they are relevant factors in assessing whether the trial court abused its discretion. *See Quijano v. Quijano*, 347 S.W.3d 345, 349 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, and the burden of making that showing falls on the party challenging the trial court's division of property. *See In re Marriage of Penafiel*, 633 S.W.3d 36, 44-45 (Tex. App.—Houston [14th Dist.] 2021, pet. denied); *In re Marriage of O'Brien*, 436 S.W.3d 78, 82 (Tex. App.—Houston [14th Dist.] 2014, no pet.). When examining a legal sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *Penafiel*, 633 S.W.3d at 44-45 (citing *Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit favorable evidence if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.* (citing *Keller*, at 168 S.W.3d at 827). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the conclusion under review. *See id.* A factual sufficiency review requires an appellate court to examine all the evidence in

determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See McCoy & Els*, 488 S.W.3d at 434; *Barras*, 396 S.W.3d at 172.

Generally, we need the trial court's findings on the value of the parties' assets to determine whether the trial court divided the community estate in a "just and right" manner. *Harrison*, 557 S.W.3d at 141. When, as here, no findings of fact were entered, we do not know the basis for the division, the values assigned to the community assets, or the percentage of the marital estate that each party received. *See id.* When no findings of fact are filed, we imply all findings necessary to support the court's judgment. *See id.* at 131 (citing *In re P.A.C.*, 498 S.W.3d at 217); *McCoy & Els*, 488 S.W.3d at 433-34.

At the hearing on the motion for new trial, Joshua's counsel told the court that the "main pieces of property that are at issue" were the marital home, debts related to the marital home, and the HFD retirement. We have already addressed Joshua's issues about the Austin Shores marital home and Joshua's HFD retirement account and found no basis for concluding that the trial court abused its discretion in distributing those assets. Although Joshua filed a Request for Findings of Fact and Conclusions of Law, none were entered, and the record does not reflect that Joshua filed a Notice of Past Due Findings under Rule 297. Without findings of fact, we must imply findings necessary to support the court's judgment. *Id.* at 131, 141.

30

Along with the parties' testimony, both parties' financial information statements and proposed inventory and appraisements were entered into evidence. Joshua does not point to any evidence in the record suggesting that the trial court did not consider all the evidence before it. *See Penafiel*, 633 S.W.3d at 44-45 (the party challenging the sufficiency of the evidence has the burden to show abuse of discretion). Viewing the record evidence in the light most favorable to the challenged finding, we find no abuse of discretion by the trial court, and we find the court's division of property is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See id.*; *McCoy & Els*, 488 S.W.3d at 434. We overrule Appellant's fourth issue.

Having overruled all Appellant's issues, we affirm the trial court's Final Decree of Divorce.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on July 5, 2022
Opinion Delivered August 31, 2022

Before Kreger, Horton & Johnson, JJ.

31